**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**LEXPATH TECHNOLOGIES
HOLDINGS, INC.,**

          Plaintiff,

    v.

**BRIAN R. WELCH and WELCH
TECHNOLOGY SERVICES, LLC,**

          Defendants.

**Case No.: 13-cv-5379-PGS-LHG**

*Document Electronically Filed*

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SANCTIONS AND SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS'
CROSS-MOTION IN LIMINE**

---

Alexander J. Kemeny, Esq.
**KEMENY, LLC**
7-G Auer Court
Williamsburg Commons
East Brunswick, New Jersey 08816
Tel: (732) 853-1725
Fax: (732) 853-1730
*Attorneys for Defendants-Counterclaimants Brian
Welch and Welch Technology Services, LLC*

TABLE OF CONTENTS

Table of Authorities ................................................................. iv

Preliminary Statement ................................................................1

Argument ...................................................................................2

    I.     Summary judgment is only appropriate where there is no dispute as to material facts and the movant is entitled to judgment as a matter of law ..............2

    II.    A court may not grant summary judgment where such a finding would be based on inadmissible hearsay. ............................................................3

    III.  The Defendants' motion in limine to excluding hearsay statements and the heretofore unproduced expert report should be granted. ......................................4

        A.  The statements by Peter Reganato and Allan Feldman are inadmissible hearsay and should be excluded at trial. ............................................................4

        B.  The report concerning the forensic analysis of the laptop provided to Brian by 2e Technology Group is inadmissible. ...............................................5

    IV.  The Plaintiff is not entitled to spoliation sanctions because Brian's actions did not constitute spoliation; nor is Plaintiff entitled to the striking of Defendants' Answer or an adverse inference, because Lexpath was not prejudiced by Brian's actions .................................................................7

        A.  Brian's actions did not amount to spoliation of evidence because CCleaner did not remove any data relevant to this matter and could not have reasonably expected the data to be discoverable. ...............................................7

        B.  The spoliation sanctions sought by the Plaintiff are not appropriate in the present matter because Lexpath was not prejudiced by the removal of the data and Lexpath shares some of the fault for its destruction. ................................11

    V.    Lexpath is not entitled to Summary Judgment with regard to its claims under either the Computer Fraud and Abuse Act. ................................................14

        A.  Brian's use of Lexpath's computer systems and the 2e Laptop was authorized. .......................................................................................14

B.   Lexpath has provided no evidence to show that it incurred more than $5,000 in costs to investigate and remedy the alleged breach of the 2e Laptop. 17

C.   The 2e Laptop is the property of 2e and is not one of Lexpath's protected systems. ...........................................................................................18

VI.   Lexpath is not entitled to summary judgment with regard to its claim for a breach of the duty of loyalty. ...............................................................18

A.   Lexpath's false allegations are not grounds for a claim arising from a breach of the duty of loyalty. ............................................................20

B.   Anticipating the post-employment solicitation of a current employer's clients is not a breach of the duty of loyalty. ....................................21

C.   The acts Brian took during his employment with Lexpath did not amount to a breach of the duty of loyalty. ....................................................22

VII.   Lexpath is not entitled to summary judgment with regard to its claims for misappropriation of trade secrets and unfair competition. ...................................24

A.   Lexpath's claim for misappropriation of trade secrets is precluded by its claim under the New Jersey Trade Secrets Act and, in addition, is not supported by the record. ....................................................................24

B.   Lexpath's claim for unfair competition is not supported by the record and the knowledge Brian had of client information, gleaned through years of experience with those clients, is not legally protected. ....................................25

VIII.   Lexpath is not entitled to summary judgment with regard to its claim for a breach of the implied covenant of good faith and fair dealing. ........................27

A.   Brian's pre-resignation planning, and taking steps to establish his new business, are not indicative of malice. ............................................28

B.   Brian did not inform Liberty and EIMC of his intent to resign from Lexpath "weeks" before his departure, nor did he disparage Lexpath to either client. ............................................................................................28

C.   Brian's attempt to negotiate a termination agreement is not evidence of malice. ...........................................................................................29

IX.   Lexpath is not entitled to summary judgment with regard to its claim for tortious interference with a prospective economic advantage. ............................30

A.   Brian's actions with regard to Liberty ........................................................30

   B.   Brian's actions with regard to EIMC ........................................................31

   C.   Disparaging remarks Brian allegedly made concerning Lexpath's other technicians ..........................................................................................32

   D.   Brian's attempt to enter into a termination agreement with Lexpath ......33

X.   Lexpath is not entitled to summary judgment with regard to its claim for disparagement. ....................................................................................................33

XI.   Lexpath is not entitled to summary judgment with regard to its claim under the New Jersey Trade Secrets Act. ......................................................................35

XII.   Lexpath is not entitled to summary judgment with regard to its claim under the New Jersey Computer Related Offenses Act. ......................................36

   A.   Alleged violations of N.J.S.A. § 2A:38A-3(a) ..........................................36

   B.   Alleged violation of N.J.S.A. § 2A:38A-3(c) ...........................................38

   C.   Alleged violations of N.J.S.A. § 2A:38A-3(e) ..........................................38

XIII.   The counterclaim by Brian Welch and WTS for Lexpath's bad-faith claim under the New Jersey Trade Secrets Act is valid. ......................................39

Conclusion ..........................................................................................................40

## TABLE OF AUTHORITIES

*Cases*

Auxton Computer Enterprises, Inc. v. Parker, 416 A.2d 952, 955 (N.J. App.Div. 1980) ...................................................................................................22, 23, 28

Bensel v. Allied Pilots Ass'n, 263 F.R.D. 150, 152 (D.N.J. 2009) .........................11

Brooks v. Price, 121 F. App'x 961, 965 (3d Cir. 2005)............................................6

Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005)..............................................................................................27

Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012)................8, 10, 14

Cameco, Inc. v. Gedicke, 724 A.2d 783, 791 (N.J. 1999)................................22, 23

Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).......................................2

CollegeSource, Inc. v. AcademyOne, Inc., 597 F. App'x 116, 129 (3d Cir. 2015).15

Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011)..........................................2

Esquire Deposition Services, LLC v. Boutot et al., No. 09-1526 (D.N.J. June 19, 2009) ................................................................................................... 30-31

Family Karate Ctr., Inc., No. A-4904—11T4 at 21-22 (N.J. Super. App. Div. June 2013) (unpublished) ...................................................................24, 26, 35

Fuentes v. Reilly, 590 F.2d 509, 511 (3d Cir. 1979) ................................................6

Grant Manufacturing & Alloying, Inc. v. McIlvain, No. 11-3859, *4 (3d Cir. 2012) (unreported)............................................................................................18

Grant Mgf. & Alloying v. McIlvain, No. 10-1029, *8 (E.D. Pa. Sept. 23, 2011) (unreported)............................................................................................18

Hurley v. Atlantic City Police Dept., 174 F.3d 95, 110 (3d Cir. 1999)....................6

In re Hechinger Inv. Co. of Delaware, Inc., 489 F.3d 568, 579 (3d Cir. 2007) ......12

Ingersoll-Rand Co. v. Ciavatta, 542 A.2d 879, 892 (N.J. 1988) .................24, 26, 35

LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1132–33 (9th Cir.2009).............15

McCann v. Miller, 502 F. App'x 163, 172 (3d Cir.2012) ..........................................6

Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904–05 (3d Cir.1977) .........................................................................................................6

Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) .................................................................................... 5-6, 6

Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000)...............6

Quinn v. Consol. Freightways Corp. of Delaware, 283 F.3d 572, 576 (3d Cir. 2002) ..............................................................................................................6

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994) ..... 11, 13-14

Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009)................................3

Tipton v. U-Go, Inc., No. A-1543-12T3, *20-21 (N.J. Super. App. Div. Aug. 28, 2014) (unpublished) .....................................................................24, 26, 35

United States v. Morris, 928 F.2d 504, 511 (2d Cir.1991) ....................................15

***Statutes and Court Rules***

18 U.S.C. § 1030(a)(5)(A) ...............................................................................14, 15

18 U.S.C. § 1030(c)(4)(A)(i)(I) .............................................................................17

18 U.S.C. § 1030(e)(11)................................................................................... 17-18

Fed. R. Civ. P. 26(a)(2)...........................................................................................5

Fed. R. Civ. P. 56 ....................................................................................................3

Fed. R. Civ. P. 56(a)................................................................................................2

Fed. R. Civ. P. 56(c)(4)............................................................................................3

Fed. R. Evid. 401 .....................................................................................................8

Fed. R. Evid. 801(c) .................................................................................................3

Fed. R. Evid. 801(d).................................................................................................4

Fed. R. Evid. 802 ..................................................................................................3, 4

Fed. R. Evid. 803 ....................................................................................4,

N.J.S.A. 2A:38A-3(a) ....................................................................36, 37, 38

N.J.S.A. 2A:38A-3(c) ........................................................................36, 38

N.J.S.A. 2A:38A-3(e) ........................................................................36, 39

N.J.S.A. 56:15-1 *et seq* ..........................................................................23

N.J.S.A. 56:15-2.........................................................................35, 40, 41

N.J.S.A. 56:15-6................................................................................40

N.J.S.A. 56:15-6(b) ...........................................................................40

N.J.S.A. 56:15-9(b) ...........................................................................24

PRELIMINARY STATEMENT

Plaintiff Lexpath Technologies Holdings, Inc. ("Plaintiff" or "Lexpath") and Defendants –Counterclaimants, Brian Welch ("Brian") and Welch Technology Services, LLC ("WTS,") (collectively "Defendants") have filed motions to dismiss in this matter. While Defendants' motion is supported by statements made by Lexpath and one of its principals, Martin Tuohy, as well as signed certifications by third parties attesting to admissible facts within their personal knowledge, the Plaintiff's motion is predicated upon hearsay and mischaracterizations of the record.

With regard to its claims of tortious interference with a prospective economic advantage, unfair competition, breach of the duty of good faith and fair dealing, and disparagement, Lexpath relies almost entirely on affidavits containing little more than hearsay piled upon hearsay. In those instances in which Lexpath attempts to rely on something other than hearsay, it relies instead on an illegible expert report which was never produced to Defendants despite it being requested in discovery.

The hearsay statements relied on by Lexpath are inadmissible when considering a motion to dismiss and would be inadmissible at trial. As such, Defendants seek an Order declaring the statements to be hearsay and excluding such statements from use at trial, except to the extent they may be used to impeach

the credibility of Mr. Lusardi, should he testify at trial. They also seek to bar the testimony and report of Plaintiff's expert, Digital4NX Group, Ltd. because Lexpath failed to identity the expert or produce the expert's report until after the expiration of discovery.

**ARGUMENT**

I.  Summary judgment is only appropriate where there is no dispute as to material facts and the movant is entitled to judgment as a matter of law.

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no dispute as to a material fact if, after discovery, the party against whom the motion is made has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). Furthermore, conclusory statements cannot demonstrate the existence of a genuine dispute as to a material fact. Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011).

Plaintiff's motion for summary judgment is fatally flawed, as it attempts to introduce conclusory statements which are demonstrably false as though they were undisputed facts. Furthermore, large portions of Plaintiff's motion are based upon inadmissible hearsay, which a court may not consider in deciding a summary judgment motion. See Part II, *infra*.

2

II.    A court may not grant summary judgment where such a finding would be based on inadmissible hearsay.

The materials Lexpath produced in support of its motion for Spoliation Sanctions and Summary Judgment are riddled with hearsay. Out-of-court statements offered to prove the truth of the matter asserted by those statements are inadmissible. F.R.E. 801(c); F.R.E. 802.

Hearsay statements that are inadmissible at trial may not be considered for the purpose of summary judgment. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009). Under Fed. R. Civ. P. 56, any affidavit made to support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Lexpath has attempted to offer into evidence the statements of Peter Reganato, see Declaration of Daniel F. Markham ("Markham Decl."), Exhibit K, Doc. 39-12, and Allan Feldman, see Markham Decl., Exhibit L, Doc. 39-13. Both affidavits recount statements allegedly made Donald Lusardi, who is not a party to this action. Lexpath offers these statements into evidence for the truth of the statements allegedly made by Mr. Lusardi, asserting that the hearsay statements constitute undisputed facts.[1] See Plaintiff's Statement of Undisputed Material Facts

---

[1] In fact, the signed statement of Jeffrey Randolph, which does not contain any hearsay, directly contradicts the affidavits and hearsay statements which Lexpath attempts to introduce.

in Support of Motion for Spoliation Sanctions and Summary Judgment ("Plaintiff's Statement of Facts"), ¶¶ 64-70, 79-80. The statements provided by Mr. Reganato and Mr. Feldman constitute inadmissible hearsay, are not based on personal knowledge, and set out no facts which would be admissible as evidence. Consequently, the statements of Mr. Reganato and Mr. Feldman may not be used to support Lexpath's Motion for Summary Judgment.

III.   The Defendants' motion in limine to excluding hearsay statements and the heretofore unproduced expert report should be granted.

     A.   The statements by Peter Reganato and Allan Feldman are inadmissible hearsay and should be excluded at trial.

Lexpath has attempted to introduce signed affidavits by Peter Reganato and Allan Feldman, the substance of which is inadmissible hearsay. As was discussed in Part II, above, <u>Rule</u> 802 precludes the introduction of hearsay statements as evidence unless the statement which the proponent seeks to introduce falls without one of the enumerated exclusions or exceptions. <u>F.R.E.</u> 801(d), 803. Lexpath has sought to introduce hearsay statements as evidence with the present motion, and is likely to attempt to introduce such evidence at trial.

The Affidavit of Peter Reganato ("Reganato Aff.") contains a description of a conversation Mr. Reganato allegedly had with Mr. Donald Lusardi, the President of Liberty Group. Reganato Aff., Doc. 39-12, ¶¶ 4-8. Lexpath provided Mr. Reganato's affidavit in an effort to prove the truth of the matter addressed by Mr.

Lusardi's statements. Declaration of Martin Tuohy ("Tuohy Decl."), Doc. 39-16, ¶¶ 44-45. Similarly, the Affidavit of Allan Feldman ("Feldman Aff.") contains a description of two separate conversations Mr. Feldman allegedly had with Mr. Lusardi in which Mr. Lusardi recounts statements alleged to have been made by Brian. Feldman Aff., Doc. 39-13, ¶¶ 6-11. Lexpath attempted to introduce Mr. Feldman's signed statement in order to prove the truth of the matter Mr. Lusardi discussed. Tuohy Delc., ¶ 46. The statements of Mr. Reganato and Mr. Feldman consist of out-of-court statements offered to prove the truth of the matter asserted, constitute inadmissible hearsay, and should should be excluded from trial.

B.     The report concerning the forensic analysis of the laptop provided to Brian by 2e Technology Group should be barred.

Under Fed. R. Civ. P. 26(a)(2), the parties must disclose the identities and provide the reports of witnesses providing testimony in the form of an expert opinion. Failure to produce an expert report during discovery is grounds for the imposition of sanctions, "a matter within the discretion of the trial court." Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) (citation omitted); see also Quinn v. Consol. Freightways Corp. of Delaware, 283 F.3d 572, 576 (3d Cir. 2002) ("Trial judges are afforded wide discretion in making rulings on the admissibility of evidence.") (citing Hurley v. Atlantic City Police Dept., 174 F.3d 95, 110 (3d Cir. 1999); Fuentes v. Reilly, 590 F.2d 509, 511 (3d Cir. 1979)); Brooks v. Price, 121 F. App'x 961, 965 (3d Cir. 2005) ("Although

Rule 37 'is designed to provide a strong inducement for disclosure of Rule 26(a)

material,' it still leaves the trial court with discretion to determine if a party

provides substantial justification for their delay or if the delay is harmless.")

(quoting Newman, 60 F.3d at 156). In the exercise of that discretion, a district

court is to consider several factors:

> (1) the prejudice or surprise of the party against whom the excluded
> evidence would have been admitted; (2) the ability of the party to cure that
> prejudice; (3) the extent to which allowing the evidence would disrupt the
> orderly and efficient trial of the case or other cases in the court; and (4) bad
> faith or wilfulness in failing to comply with a court order or discovery
> obligation.

Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000).

In addition, the court should consider "the importance of the excluded

testimony because the 'exclusion of critical evidence is an extreme sanction, not

normally to be imposed absent a showing of willful deception or flagrant disregard

of a court order by the proponent of the evidence.'" McCann v. Miller, 502 F.

App'x 163, 172 (3d Cir.2012) (quoting Meyers v. Pennypack Woods Home

Ownership Ass'n, 559 F.2d 894, 904–05 (3d Cir.1977).

In the present case, Brian and WTS will be substantially prejudiced if the

Court permits the Plaintiff to introduce expert testimony concerning the forensic

analysis of the 2e Laptop. Counsel for Lexpath had its expert report (the "Report")

for at least a year prior to producing the Report with its present motion. See

Kemeny Cert., ¶¶ 8-10. Plaintiff indicates that the Report in its unabridged form is

more than 2,500 pages long. Tuohy Decl., n.8. Examining and responding to such a report would require a significant amount of time and effort, but counsel for the Defendants have been deprived of more than a year in which they could have reviewed the document to prepare for trial. Furthermore, Plaintiff's decision not to disclose the expert report has prevented Defense taking the deposition of the previously undisclosed expert since the time to take expert depositions has expired.

Excluding the report will not prejudice the Plaintiff. Brian Welch does not dispute that he ran CCleaner on the 2e Laptop after his resignation from Lexpath in order to remove temporary internet files, stored passwords, and other junk files which occupy valuable hard drive space and reduce a computer's performance. Because the use of CCleaner after his resignation from Lexpath is undisputed, the probative value of the report would be negligible and Lexpath will not suffer significant prejudice from the exclusion of its late report.

IV.   The Plaintiff is not entitled to spoliation sanctions because Brian's actions did not constitute spoliation; nor is Plaintiff entitled to the striking of Defendants' Answer or an adverse inference, because Lexpath was not prejudiced by Brian's actions.

  A.   Brian's actions did not amount to spoliation of evidence because CCleaner did not remove any data relevant to this matter and could not have reasonably expected the data to be discoverable.

Brian's use of CCleaner on the 2e laptop does not constitute spoliation of evidence because the files he removed were not relevant, and Brian could not have reasonably foreseen that the data would be discoverable after Martin Tuohy

7

assented to Brian "cleaning up" the computer before returning it. The Third Circuit has stated that a finding of spoliation requires the movant to show that 1) the evidence was in the non-moving party's control, 2) was actually suppressed or withheld, 3) was relevant to the matter, and 4) the duty to preserve the evidence was reasonably foreseeable. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012).

In this case, Lexpath has failed to satisfy its burden of demonstrating that the temporary internet files that were deleted were relevant that the duty to preserve was foreseeable. As such, Lexpath's request for sanctions should be denied.

1.    The data removed by CCleaner was not relevant to any claim or defense in the present matter.

The files that were removed from the 2e Laptop were "junk files" such as cookies and temporary internet files and not relevant to the case. Welch Cert., ¶¶16 & 21. A piece of evidence is relevant to a matter if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." F.R.E. 401. Lexpath has provided nothing more than a bald assertion that "some or all of [the] files likely related to Welch's conduct as a Lexpath employee, his dealings and communications with Lexpath clients, and his access to Lexpath trade secrets and confidential information." See Plaintiff Lexpath Technologies Holdings, Inc.'s Memorandum in Favor of Motion for Summary Judgment ("Plaintiff's

8

Memorandum of Law"), 13.

Despite possessing a spreadsheet containing a list of files spanning at least twenty pages,[2] the Plaintiff does not identify a single specific file or provide grounds for the claim that any one of them contains relevant evidence in this matter. In fact, the excerpts of the computer forensic expert's report submitted with the Plaintiff's motion are largely illegible. See Declaration of Martin Tuohy ("Tuohy Decl."), Exhibit D, Doc. 39-20. The lack of relevance is highlighted by the fact that, while Lexpath was aware that Brian has his own computer and used it in the course of his employment, see WT 360:17-21, it has not sought to image or inspect the drives of any of Brian's personal computers or other electronic devices. Kemeny Cert., ¶ 7.

> 2.     A person in Brian's position could not have reasonably foreseen that the data removed by CCleaner would later be subject to discovery requests.

Brian used CCleaner to "clean up" the 2e Laptop, an act which was authorized by Martin Tuohy and which is consistent with both the purpose of CCleaner and Lexpath's pattern and practice with regard to the use of the program on its own client's systems, and could not reasonably have foreseen that the data removed by CCleaner would be discoverable. The question of whether a duty to

---

[2] The Defendants presume that the Plaintiff possesses a complete and readable copy of the spreadsheet attached to the Declaration of Martin Tuohy as Exhibit D, despite never producing such a document to the Defendants and despite the copy produced with Plaintiff's motion being largely illegible.

preserve potentially discoverable materials is reasonably foreseeable is an objective, "flexible[,] fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." Bull, 665 F.3d at 78.

Brian regularly used the 2e Laptop for personal matters, including "banking, personal e-mail, online dating," and health matters. See Transcript of the Deposition of Brian Welch ("Welch Deposition" or "WT"), Doc. 39-6, 360:8-361:4. Martin Tuohy was aware of and permitted Brian to use the 2e Laptop for non-work purposes. Id. After Brian's resignation, he asked Martin about returning the 2e Laptop and Martin told him that "Rita" would be in touch to arrange the return. Brian also asked whether he should "clean up" the 2e Laptop before returning it, to which Martin responded, "Yes. Thank you." See Welch Cert., ¶ 9. Brian cleaned up the 2e Laptop using CCleaner, software which Lexpath, and 2e before it, regularly ran on client computers in order to remove forgotten temporary files taking up space on their systems. See Welch Cert., Exhibit "C". The deletion of files which resulted from Brian's use of CCleaner was not done in bad faith, but rather was a routine process used by Brian speed up processing speed and was done with Martin Tuohy's knowledge and assent.

The circumstances surrounding Brian's use of the 2e Laptop, Martin Tuohy's authorization of the use of CCleaner, and 2e and Lexpath's practice in

handling client systems indicate that a reasonable person in Brian's position would not have foreseen that the data removed by CCleaner would later be subject to discovery.

B.   The spoliation sanctions sought by the Plaintiff are not appropriate in the present matter because Lexpath was not prejudiced by the removal of the data and Lexpath shares some of the fault for its destruction.

Even if this Court concludes that the data removed from the 2e Laptop by Brian's use of CCleaner was relevant to the present matter, the sanctions sought by Lexpath—striking the Defendants' Answer or the imposition of adverse inference—are not appropriate in this case. Determining whether it is appropriate to impose spoliation sanctions in a particular case requires a court to assess "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Bensel v. Allied Pilots Ass'n, 263 F.R.D. 150, 152 (D.N.J. 2009) (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)). Lexpath has failed to show that it was prejudiced by the running of CCleaner and, even if this Court concludes that the company was prejudiced by the deletion of the data, it shares a degree of fault for that destruction thanks to Martin Tuohy permitting Brian to "clean up" the 2e Laptop before providing it to Lexpath.

11

      1.     Lexpath has not shown that it suffered a prejudice as a result of the deletion of the data.

In order to show prejudice, a party seeking a spoliation sanction must have some basis for the conclusion that the lost evidence would have aided it in the prosecution of its case. In re Hechinger Inv. Co. of Delaware, Inc., 489 F.3d 568, 579 (3d Cir. 2007). Without some basis, a finding of prejudice would be "purely speculative." Id. Lexpath has provided no basis for such a finding.

Lexpath's entire argument that Brian's decision to run CCleaner on the 2e Laptop prejudiced its case consists of the single statement, "Some or all of these files likely related to Welch's conduct as a Lexpath employee, his dealings and communications with Lexpath clients, and his access to Lexpath trade secrets and confidential information." Lexpath provides no basis for the conclusion that any of them would have been useful to its case.

Moreover, Martin Tuohy knew that Brian owned a desktop computer and personal laptop, see WT 360:17-21, that he occasionally used them in his employment with 2e and Lexpath, see Id., and that they contained files responsive to Lexpath's discovery requests, see WT 329:6-337:23, yet at no point did Lexpath request images of the drives for those computers or ask whether Brian ran CCleaner on those computers. This raises the question of how valuable such files could possibly be to Lexpath's case.

Finally, Martin Tuohy testified at deposition that any knowledge Brian had

12

of Lexpath's trade secrets or confidential information would have come from

Brian's conversations with him, with the clients themselves, or through

Rackspace's web portal, and that no pricing information existed in digital form.

See Transcript of the Deposition of Martin Tuohy ("Tuohy Deposition" or "TT"),

Doc. 39-5, 113:9-116:8. That being the case, and assuming Brian actually

possessed Lexpath's trade secrets and confidential information (which the

Defendants do not concede), it would not appear that the files on the 2e Laptop

could have contained relevant information that would not be available to Lexpath

from its own computer systems.

In short, Lexpath provides no basis for its assertion that the unidentified files

removed by CCleaner contained material that would have aided it in this matter,

and the record suggests that the files could not have contained relevant data which

was otherwise unavailable to Lexpath. Thus, Lexpath was not prejudiced by the

deletion of the unidentified files by CCleaner.

        2.    The degree of fault on the part of Brian was minimal, since the
data was not deleted in bad faith and the deletion was assented
to by a principal of Lexpath.

Brian's use of CCleaner was done with the knowledge and approval of

Martin Tuohy. The propriety of a spoliation sanction depends on the degree of

fault of the party who altered or destroyed the evidence. Schmid v. Milwaukee

Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994). "Furthermore, a finding of bad

13

faith is pivotal to a spoliation determination." <u>Bull v. United Parcel Serv., Inc.</u>, 665

F.3d 68, 79 (3d Cir. 2012). Brian did not remove the data in bad faith and his

degree of fault is minimal.

Absent prejudice to the movant, or fault on the part of the non-movant, the

imposition of sanctions is inappropriate even where a court has determined that

spoliation actually occurred. Lexpath was not prejudiced by the deletion of the data

and, even if it were prejudiced, its own principal, Martin Tuohy, shared a degree of

fault in the deletion of the data. Thus it would be inappropriate to impose

spoliation sanctions in this case.

V.     Lexpath is not entitled to Summary Judgment with regard to its claims under
       the Computer Fraud and Abuse Act.

Lexpath's claim under the Computer Fraud and Abuse Act ("CFAA") is

predicated on a number of unsupported assertions. A private party may bring a

claim under the CFAA where data is obtained from a protected computer, or a

protected computer or its data are damaged or destroyed, without authorization,

and the cost of investigating and remedying the breach exceeds $5,000. Brain's use

of Lexpath's protected systems was authorized. Furthermore, Lexpath has

produced no evidence to show it incurred damages exceeding $5,000, and the 2e

Laptop was not a protected system of Lexpath.

A.     Brian's use of Lexpath's computer systems and the 2e Laptop was
       authorized.

14

To be liable under subsection (a)(5)(A) of the CFAA, a person must knowingly engage in conduct that "intentionally causes damage without authorization, to a protected computer." 18 U.S.C.A. § 1030(a)(5)(A). Although the CFAA does not define "without authorization," this Circuit agrees with the Second and Ninth Circuits that the term "should be given its 'common usage, without any technical or ambiguous meaning.'" CollegeSource, Inc. v. AcademyOne, Inc., 597 F. App'x 116, 129 (3d Cir. 2015) quoting United States v. Morris, 928 F.2d 504, 511 (2d Cir.1991) and citing LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1132–33 (9th Cir.2009).

Brian was authorized to use Lexpath's protected systems. He was granted access to 2e's Rackspace portal, Autotask system, and webmail portal. See Plaintiff's Supplemental Answers to First Set of Interrogatories ("Plaintiff's Answers to Interrogatories"), Doc. 39-10, Response to Int. No. 6. Lexpath's Complaint states unequivocally that Brian was given "full-and-open access to much of Lexpath's computer files and information," including the company's client management system and "Rackspace reseller management portal." See Complaint at ¶ 13. Thus, any alleged access was authorized and summary judgment in favor of Lexpath is foreclosed.

In addition, after Brian resigned from Lexpath, Martin Tuohy contacted him for assistance with a number of Lexpath's clients. Martin Tuohy requested Brian's

15

assistance with the email account of Tom Reardon, a principal of a Lexpath client, Reardon Anderson, LLC. <u>See</u> Welch Cert., ¶¶ 6-14. On the evening of August 2, 2013, after Brian had resigned, Martin Tuohy asked him to "let [Martin] know how things stand with Reardon." <u>See</u> Welch Cert., Exhibit "A," 1.

Later, on August 6, 2013, four days after Brian's resignation and barely three hours before Lexpath's counsel sent Brian a cease-and-desist letter, Martin again contacted Brian, asking that he provide "server and firewall login info" for one of Lexpath's clients, Select Coverage. <u>See</u> Id. at 3. Martin also was aware that Brian still possessed the 2e Laptop, but did not take possession of it at that time, instead telling Brian that "Rita" would get in touch with him to arrange for him to hand over the 2e Laptop.

Lexpath knew that Brian had the 2e Laptop in his possession, knew that Brian would need to access the 2e Laptop in order to provide Martin Tuohy with the assistance he requested, and gave its implicit consent for Brian to access the 2e Laptop. In light of this knowledge and authorization, Lexpath cannot now prevail in a motion for summary judgment on the grounds that Brian accessed the 2e Laptop without authorization after his departure from Lexpath.

Brian's use of CCleaner on the 2e Laptop was also authorized. During one of their conversations, Brian raised the issue of the 2e Laptop with Martin, who told him that "Rita" would be in touch with him to arrange for him to hand it over

16

to Lexpath. Brian asked whether he should "clean it up" before providing it to Lexpath, and Martin responded, "Yes. Thank you."

Lexpath technicians routinely used CCleaner to remove unneeded files and clutter from a computer. Welch Cert., ¶ 16; Welch Cert., Exhibit "C." Lexpath has produced no evidence to indicate that it was damaged in any way by his usage of CCleaner, and appears to rely on the lack of evidence on the 2e Laptop as justification for the expense of a forensic analysis of the computer.

Given that there is no evidence that Brian copied or took valuable client information from Lexpath's computers, as well as the fact that he had the consent of Martin Tuohy to use CCleaner on the 2e Laptop and that Lexpath has not shown that it was damaged by that action, this Court may and should deny Lexpath's motion for summary judgment with regard to its CFAA claim.

B.   The 2e Laptop is the property of 2e and is not one of Lexpath's protected systems.

The 2e Laptop is not one of Lexpath's protected systems. According to Martin Tuohy, Lexpath and 2e remain separate legal entities. TT 16:16-17-1. Lexpath bought 2e's client list in exchange for a share of the profits Lexpath received from servicing those clients. TT 17:12-18:13. There is no evidence to indicate that Lexpath purchased any physical property or equipment from 2e in January of 2013. Furthermore, Ari McKenzie, a Lexpath employee, indicated to Brian that the 2e Laptop was not Lexpath's property. See Welch Cert., ¶¶ 3, 5. As

17

such, the laptop provided to Brian during his employment with 2e remains the

property of 2e and Lexpath lacks standing to bring a claim arising from Brian's

access to the 2e Laptop under the CFAA.

  C.  Lexpath provided no evidence to show that it incurred more than
    $5,000 in costs to investigate and remedy the alleged breach of the 2e
    Laptop .

  Martin Tuohy asserts in his Declaration that Lexpath has incurred costs of

approximately $8,000 in obtaining a forensic analysis of the 2e Laptop. Section

1030(c)(4)(A)(i)(I) includes conduct which causes "loss to 1 or more persons

during any 1-year period . . . aggregating at least $5,000 in value[.]" "Loss" is

defined as:

> "[A]ny reasonable cost to any victim, including the cost of responding to an
> offense, conducting a damage assessment and restoring the data, program,
> system, or information to its condition prior to the offense, and any revenue
> lost, cost incurred, or other consequential damages incurred *because of
> interruption of service*[.]

18 U.S.C. 1030 (e)(11) (emphasis added).

  The Third Circuit clarified that losses under the statute include losses

incurred in "resolv[ing] issues related to a potential CFAA violation." Grant

Manufacturing & Alloying, Inc. v. McIlvain, No. 11-3859, *4 (3d Cir. 2012)

(unreported). This holding affirmed a lower court's conclusion that the statute

contemplated losses "attributable to . . . efforts to investigate and respond to the

alleged CFAA violations," and that the company's failure to quantify the portion

attributable to the alleged violation precluded the court from hearing a civil claim brought under the CFAA. Grant Mgf.& Alloying v. McIlvain, No. 10-1029, *8 (E.D. Pa. Sept. 23, 2011).

Lexpath must show that Mr. Welch's alleged actions regarding Lexpath's protected computer systems resulted in more than $5,000 in costs and provide evidence showing that those costs were in fact connected to Brian's use of the computer. Lexpath produced no documentation in discovery to support Martin Tuohy's claim that the company incurred approximately $8,000 in costs associated with Brian's access to the 2e Laptop, nor did Lexpath even disclose that it had incurred expert costs to have the 2e Laptop analyzed by an expert outside of Lexpath. Despite discovery requests and a scheduling order, Lexpath has never provided a concrete description of the damages it claims it incurred in connection with this claim. See Kemeny Cert., ¶ 6. Lexpath has failed to adequately support its claim, either in discovery or in connection with its motion, that Brian's use of the 2e Laptop caused it to incur more than $5,000 in costs is fatal to its claim under the CFAA.

VI.    Lexpath is not entitled to summary judgment with regard to its claim for a breach of the duty of loyalty.

Lexpath's allegations that a number of actions taken by Brian amount to a breach of his duty of loyalty are either demonstrably false or do not rise to the level

19

of a breach of that duty. Lexpath alleges six specific instances of "improper conduct."[3] Two of those allegations, that Brian provided a rate sheet to EIMC prior to his resignation and disparaged Lexpath to Liberty and EIMC, are simply false. Another, Brian's anticipation that he would eventually attempt to bring Liberty and EIMC on as clients of WTS, does not even amount to *an act* and is permitted under New Jersey law. Finally, the remaining acts are not sufficient to rise to the level of a breach of the duty of loyalty in light of Brian's low-level position at Lexpath.

> A.   Lexpath's false allegations are not grounds for a claim arising from a breach of the duty of loyalty.

Two of Lexpath's claims are demonstrably false. Brian did not provide a rate sheet to EIMC until after his employment with Lexpath had terminated, nor did he disparage Lexpath to either EIMC or Liberty. These allegations cannot, therefore, be ground for a claim of a breach of Brian's duty of loyalty to Lexpath.

Lexpath alleges that Brian breached his duty to it by "sending EIMC a proposal for WTS's services *prior to his resignation* from Lexpath." <u>See</u> Plaintiff's Memorandum of Law, 20 (emphasis added). In support of this allegation, Lexpath points to Brian's deposition testimony and exhibits, as well as his responses to Lexpath's interrogatories. <u>See</u> Plaintiff's Memorandum of Law, 20. Those portions of the record do not support that claim. Brian provided a rate sheet to Paul

---

[3] Lexpath also alleges that Brian may have taken other actions that were concealed by the use of CCleaner on the 2e Laptop. Lexpath provides no support for this assertion.

Hammes in an email on August 4, 2013. WT 316:8-318:13; Hammes Cert., ¶ 16.

Lexpath also points to Brian's responses to the Plaintiff's interrogatories as

supporting this allegation, but a close reading of that page reveals nothing that

supports Lexpath's assertion. Brian Welch's Answers to Plaintiff's Interrogatories

("Welch Answers to Interrogatories"), Interrogatory #6. Moreover, Paul Hammes

stated that he did not receive a rate sheet from Brian until August 4, 2013, two

days *after* Brian resigned from Lexpath. See Certification of Paul E. Hammes

("Hammes Cert."), Doc. 40-6, ¶ 16.

Similarly, Lexpath's allegation that Brian disparaged Lexpath to EIMC and

Liberty is false and totally unsupported by any admissible evidence. The substance

of Lexpath's disparagement claims are addressed in Part X, *infra*, but it is

appropriate to note here that both Paul Hammes and Jeffrey Randolph have

certified that they know of no instance in which Brian disparaged 2e, Lexpath, or

their technicians to any employee of either EIMC or Liberty, respectively. See

Hammes Cert., ¶¶ 9-12; Certification of Jeffrey Randolph ("Randolph Cert."), Doc.

40-9, ¶¶ 14-18. In addition, the statements relied on by Lexpath in making the

allegation constitute inadmissible hearsay which cannot be relied on in a motion

for summary judgment. See Part II, *infra*. As such, these statements may not be

used to support a motion for summary judgment.

     B.     Anticipating the post-employment solicitation of a current employer's
            clients is not a breach of the duty of loyalty.

Under New Jersey law, an employee has the right to take steps in preparation for other employment or for starting a competing business. Auxton Computer Enterprises, Inc. v. Parker, 416 A.2d 952, 955 (N.J. App.Div. 1980). Lexpath's allegation that Brian was "planning to solicit EIMC and Liberty," Plaintiff's Memorandum of Law, 19, does not even amount to *taking steps* in preparation for starting a competing business. That he intended to make the attempt to bring Liberty and EIMC does not amount to a breach of his duty to Lexpath.

    C.    The acts Brian took during his employment with Lexpath did not amount to a breach of the duty of loyalty.

The New Jersey Supreme Court has stated that the degree of loyalty owed to an employer varies with the nature of the employee's relationship with that employer. "An officer, director, or key executive . . . has a higher duty than an employee working on a production line." Cameco, Inc. v. Gedicke, 724 A.2d 783, 791 (N.J. 1999); see also Auxton Computer Enterprises, Inc. v. Parker, 416 A.2d 952, 955 (N.J. App.Div. 1980).

In Cameco, the New Jersey Supreme Court indicated that the employee-defendant had not breached his duty of loyalty because, in part, he was not an executive or in a position of trust and confidence with the plaintiff. 724 A.2d at 788. In Auxton, the defendant-employee was a "data processing consultant" who took a sick-day in order to attend, on behalf of a competitor of his employer, a meeting with a third company which his employer, the plaintiff, sought to recruit

22

as a client. 416 A.2d at 953-54. The Appellate Division determined that *participating in a meeting on behalf of a competitor* did not "reach that level of impropriety which has heretofore been required" to establish a breach of loyalty. Id. at 956.

Brian, like the employees in <u>Cameco</u> and <u>Auxton</u>, was in a position much more akin to a worker on a production line than to a manager or executive. Brian was not an executive of Lexpath, nor was he in a position of trust and confidence, as evidenced by the fact that he was not included in weekly management conference calls. TT 116:9-13; WT 201:23-202:2. Given Brian's low-level position in the company, his actions are insufficient to constitute a breach. Lexpath accuses Brian of soliciting the business of EIMC and Liberty before his departure from Lexpath by informing employees of both Liberty and EIMC of his impending departure from Lexpath and providing Liberty with a rate sheet and his contact information at WTS on August 1, 2013, the day before his resignation. As was the case in <u>Auxton</u> and <u>Cameco</u>, neither of these acts is of sufficient severity to rise to the level of a breach of Brian's duty of loyalty to Lexpath, particularly in light of his low-level, "production-line" position within the company. Moreover, those action did cause Lexpath to sustain any damages as Liberty and EIMC would have immediately retained Brian's services after he left Lexpath even if they had not known of his intention to resign until after his resignation. Randolph Cert., ¶¶ 33-

35; Hammes Cert., ¶¶ 29-30

VII.   Lexpath is not entitled to summary judgment with regard to its claims for misappropriation of trade secrets and unfair competition.

Lexpath alleges both the misappropriation of trade secrets and unfair competition under New Jersey common law, as well as a claim for the violation of the New Jersey Trade Secrets Act (the "NJTSA"), N.J.S.A 56:15-1 *et seq.* Complaint, Counts III and IV. However, the NJTSA expressly states that it supersedes "conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." N.J.S.A 56:15-9(b). This Court should therefore deny Lexpath's motion for summary judgment with regard to Count III, as that common law claim has been preempted by the statute. However, even if this Court finds that Lexpath's common law claims are not superseded, the information Lexpath claims Brian misused is not legally protected.

A.   Lexpath's claim for misappropriation of trade secrets is precluded by its claim under the New Jersey Trade Secrets Act and, in addition, is not supported by the record.

This Court should deny summary judgment in favor of Lexpath with regard to Count III. Skill, expertise, and knowledge, including personal knowledge of client information, obtained not through access to a client list or similar source but rather through long-term personal interaction with the client itself, is not legally protectable. Family Karate Ctr., Inc., No. A-4904—11T4 at 21-22 (N.J. Super. App. Div. June 2013) (unpublished); Tipton v. U-Go, Inc., No. A-1543-12T3, *20-

24

21 (N.J. Super. App. Div. Aug. 28, 2014) (unpublished). Rather, such information is considered "part of the employee's person." Ingersoll-Rand Co. v. Ciavatta, 542 A.2d 879, 892 (N.J. 1988) (defendant's post-employment invention was not assignable to former employer). The law does not expect employees to cordon off their knowledge and skill as unusable after they leave their employment.

In support of its claim, Lexpath states that Brian "had access to" a number of different classes for information which Lexpath alleges constitute its trade secrets but never states that Brian actually obtained the information in question. Plaintiff's Memorandum of Law, 23. In fact, Martin Tuohy admitted that Lexpath is unaware of even single instance in which Brian downloaded, copied or misappropriated Lexpath's trade secrets, confidential information or propriety information without authorization from Lexpath. TT 198:6-23 Rather, the information obtained by Brian was obtained through conversations with Martin Tuohy and the employees of the clients themselves. TT 121:19-122:9. Additionally, Brian was not subject to any confidentiality agreement in connection with his employment at either 2e or Lexpath. New Jersey law considers such knowledge a "part of the employee's person" and not a legally-protectable asset of the employer. Ingersoll-Rand Co., 542 A.2d at 892. Brian's personal knowledge is not legally protectable. Lexpath is therefore not entitled to summary judgment with regard to Count III.

B.   Lexpath's claim for unfair competition is not supported by the record and the knowledge Brian had of client information, gleaned through

25

years of experience with those clients, is not legally protected.

Lexpath is not entitled to summary judgment with regard to its claim of unfair competition predicated upon the misappropriation of confidential information. If Count IV of Lexpath's complaint is not superseded by the NJTSA, see Part VII(A), above, Lexpath is still not entitled to summary judgment, because Brian's personal knowledge does not constitute Lexpath's legally-protected confidential information.

As was stated above, the courts in New Jersey do not expect employees to cordon off a corner of their memory as untouchable after they leave their employment. Family Karate Ctr., Inc., No. A-4904-11T4 at 21-22; Tipton, No. A-1543-12T3 at *20-21; Ingersoll-Rand Co., 542 A.2d at 892. Brian gleaned his knowledge of Lexpath's clients, their needs, and their computer systems through years of experience providing support services to those clients. See Hammes Cert., ¶¶ 4, 7-8; Randolph Cert., ¶¶ 8-14; TT 115:6-116:4. Lexpath provides no basis for the Court to conclude that he utilized any other information when he provided the same services to Liberty and EIMC after his departure from Lexpath.

Because Lexpath provided no evidence that Brian utilized information, independent of his own personal knowledge of the client, in soliciting and providing support services to Liberty and EIMC, Lexpath's motion for summary judgment with regard to Count IV should be denied.

VIII.   Lexpath is not entitled to summary judgment with regard to its claim for a
breach of the implied covenant of good faith and fair dealing.

Lexpath's claim that Brian breached the covenant of good faith and fair
dealing implied in his employment contract with Lexpath is predicated on a
number of false claims. Firstly, while Brian and Lexpath were party to an
employment contract, Brian did not deny Lexpath the fruits of that contract.
Throughout his employment with 2e and Lexpath, Brian diligently provided IT
support services on behalf of the company to its clients, see Hammes Cert., ¶¶ 4, 7-
11; Randolph Cert., ¶¶ 8-12, and even continued to assist Martin Tuohy for several
days *after* he resigned from Lexpath. Welch Cert., ¶¶ 6-14.

Not only did Brian provide Lexpath with the benefit of its bargain prior to,
on the day of, and *after* his resignation, but Lexpath's allegation that Brian acted
with malice is predicated on a number of assertions which are demonstrably false.
As Lexpath acknowledged in Plaintiff's Memorandum of Law, a claim for the
breach of the covenant of good faith and fair dealing requires the plaintiff to show
malice or other bad motive. Brunswick Hills Racquet Club, Inc. v. Route 18
Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005).

Lexpath attempts to demonstrate that Brian acted with malice by making
four allegations: A) that Brian "spent months before his resignation setting up
WTS and planning to solicit two of Lexpath's biggest clients;" B) that he informed
Liberty and EIMC of his departure from Lexpath "weeks" before his resignation

27

and that he disparaged Lexpath to Liberty and EIMC; and C) that he "attempted to coerce Lexpath into a termination agreement" when he tendered his resignation. <u>See</u> Plaintiff's Memorandum of Law, 27.

>    A.    Brian's pre-resignation planning, and taking steps to establish his new business, are not indicative of malice.

Lexpath states in Plaintiff's Memorandum of Law that "there can be no doubt of Welch's malicious motive. Welch spent the months before his resignation setting up WTS and planning to solicit two of Lexpath's biggest clients." <u>See</u> Plaintiff's Memorandum of Law, 27. Under New Jersey law, an employee has the right to take steps in preparation for other employment or for starting a competing business. <u>Auxton</u>, 416 A.2d at 955. That being the case, Lexpath's attempt to use Brian's preparation as evidence of malice is unavailing.

>    B.    Brian did not inform Liberty and EIMC of his intent to resign from Lexpath "weeks" before his departure, nor did he disparage Lexpath to either client.

In attempting to argue that Brian acted out of malice, Lexpath makes two allegations which are demonstrably false. First, Lexpath stated that Brian informed Liberty and EIMC of his intent to leave Lexpath "weeks" before he informed Lexpath of his resignation. Brian informed EIMC of his decision to resign on August 1, 2013, one day before resigning from Lexpath. <u>See</u> Hammes Cert., ¶ 13. Brian informed Liberty of his decision to leave Lexpath barely one week prior to his departure. <u>See</u> Randolph Cert., ¶ 19. The very portions of the record cited to by

28

Lexpath demonstrate the falsehood of this allegation. See WT 222:13-17; Welch

Answers to Interrogatories, Interrogatory Response No. 6.

Second, Lexpath alleges that Brian told Liberty and EIMC that "Lexpath's

other technicians were not as experienced or skilled as [him], and that [he] was the

only person at Lexpath capable of servicing their accounts." However, Lexpath

provides no admissible evidence to support this allegation and both Paul Hammes

of EIMC and Jeffrey Randolph of Liberty have stated in signed certifications that

they are aware of no instance in which Brian disparaged Lexpath to any employee

of their respective organizations. Hammes Cert., ¶ 12; Randolph Cert., ¶¶ 17-18.

C.   Brian's attempt to negotiate a termination agreement is not evidence
     of malice.

Finally, Lexpath puts forward Brian's attempt to negotiate a termination

agreement as evidence of malice, going so far as to deem it an act of coercion. See

Plaintiff's Memorandum of Law, 27. Brian was not party to any non-compete

agreement with Lexpath. Plaintiff's Admissions, at ¶ 9. However, in the hope of

avoiding unnecessary conflict, Brian raised with Martin Tuohy the possibility of

entering into an arrangement whereby Lexpath would allow Brian to bring EIMC

and Liberty to WTS in exchange for his agreement that he would not pursue any of

Lexpath's other clients. TT 150:21-151:14. Martin Tuohy refused his offer. TT

150:21-151:5. As Brian was not subject to a non-compete agreement, the proposed

arrangement would have constituted a voluntary restriction on his business

29

interests, not a malicious act against Lexpath.

Given that Lexpath has provided no evidence that Brian acted with malice when he set up his own company in preparation for his resignation, and then attempted to make the transition as smooth as possible by entering into a termination agreement upon his resignation, this Court should deny Lexpath's motion for summary judgment with regard to Count V of Lexpath's Complaint.

IX.   Lexpath is not entitled to summary judgment with regard to its claim for tortious interference with a prospective economic advantage.

Lexpath alleges four distinct grounds on which it stakes its claim of tortious interference with a prospective economic advantage: A) Brian's actions concerning Liberty; B) Brian's actions concerning EIMC; C) disparaging remarks Brian allegedly made concerning Lexpath's other technicians; and D) Brian's attempt to come to an agreement with Lexpath concerning how to handle his departure. As Lexpath acknowledges, a claim for tortious interference with a prospective economic advantage requires the plaintiff to prove that, *inter alia*, 1) that it was reasonably probable that plaintiff would have realized the expected economic advantage, and 2) the defendant intentionally and maliciously interfered in that economic relationship. See Plaintiff's Memorandum of Law, 28 (citing Esquire Deposition Services, LLC v. Boutot et al., No. 09-1526 (D.N.J. June 19, 2009)). Lexpath cannot meet either of the above elements.

A.    Brian's actions with regard to Liberty

Brian's actions with regard to Liberty do not amount to tortious interference with a prospective economic advantage. Lexpath alleges that Brian disparaged Lexpath to employees of Liberty in order to "lure" the company into hiring WTS. However, Liberty's General Manager stated that Brian never disparaged Lexpath to him, nor was he aware of any instance in which Brian made a disparaging comment about Lexpath to any other Liberty employee. See Randolph Cert., ¶ 15-18. Moreover, in his affidavit he describes the reasoning which prompted Liberty to switch to WTS for its IT support needs, including: Brian's familiarity with Liberty's computer systems and software, other technicians' lack of knowledge, and the friendly relationship Brian had with Liberty's employees. Id. at ¶¶ 25-31. Finally, Mr. Randolph stated that *he would have pursued Brian's services* as soon as he became aware of his departure from Lexpath.

Given these facts, it was far from "reasonably probable" that Liberty would have remained a client of Lexpath for any significant length of time after Brian's departure, regardless of any "malicious" action on Brian's part.

B.     Brian's actions with regard to EIMC

As was the case with Liberty, Brian's conduct with regard to EIMC does not constitute tortious interference with a prospective economic advantage. Lexpath's claim on this front fails for the same reasons as are laid out above. Lexpath cannot show it had a reasonable expectation of a continued economic relationship, nor can

31

it show malicious interference with that relationship.

EIMC would have immediately pursued Brian's services upon learning of his departure from Lexpath. See Hammes Cert., ¶¶ 1, 30. EIMC's decision to switch from Lexpath to WTS was based not on any remarks made by Brian, but rather on EIMC's experiences with other Lexpath technicians, see Hammes Cert. at ¶¶ 9-10, the concern that, after the EIMC account was taken over by Lexpath, the company would not be seen as a priority client, see Id. at ¶¶ 25-26, and the good working relationship Brian had with Paul Hammes and EIMC's other employees. See Id. at ¶ 28. As such, Lexpath had no reasonable expectation that EIMC would remain their client after Brian's departure.

Lexpath has alleged that Brian disparaged Lexpath to employees of EIMC in order to "lure" the company into hiring WTS, but Paul Hammes stated that he was unaware of a single instance of Brian making a negative comment about Lexpath or its technicians. See Hammes Cert., ¶ 12. Moreover, Lexpath bases its claim on Martin Tuohy's description of a conversation with Paul Hammes, which amounts to inadmissible hearsay which, as was laid out in Part II, above, cannot be considered in the context of a summary judgment motion.

C.   Disparaging remarks Brian allegedly made concerning Lexpath's other technicians

The substance of Lexpath's disparagement claims is discussed fully in Part X, below. However, it should be noted here that to the extent Lexpath bases its

claim on instances of disparagement other than those explored in Parts IX(A) and

(B), above, Lexpath's only support for such allegations amounts to inadmissible

hearsay which cannot be considered for the purposes of a summary judgment

motion. See Part II, *supra*.

> D.    Brian's attempt to enter into a termination agreement with Lexpath

> Finally, Lexpath alleges that Brian's attempt to negotiate a termination

agreement constitutes tortious interference with a prospective economic advantage,

a malicious act, and coercion. See Plaintiff's Memorandum of Law, 30. Because

Brian and Lexpath never entered into non-compete agreement, Brian was be free to

pursue any and all of Lexpath's clients after his resignation. Entering into a

termination agreement would have placed a limitation on Brian, not on Lexpath.

Both Jeffrey Randolph at Liberty and Paul Hammes at EIMC have stated

unequivocally that both companies would have sought out Brian's services

immediately upon learning of Brian's departure from Lexpath. Randolph Cert., ¶¶

33-35; Hammes Cert., ¶¶ 29-30. The arrangement Brian proposed would have

allowed Lexpath to maintain them as clients for a short period, eased the transition,

and precluded Brian from competing with Lexpath for the business of its other

clients. Lexpath now attempts to construe this arrangement as malicious coercion

when it in fact constituted a voluntary restriction on Brian's commercial interests.

X.    Lexpath is not entitled to summary judgment with regard to its claim for
       disparagement.

Lexpath has alleged that Brian disparaged Lexpath to EIMC, Liberty, and Mental Health Association in New Jersey ("MHANJ"). <u>See</u> Complaint at ¶ 38; Plaintiff's Memorandum of Law, 32. As the Plaintiff correctly points out, a claim of commercial disparagement requires the claimant to show that a false statement was made and that the statement "play[ed] a material part in" impairing the claimant's interests. <u>See</u> <u>Id.</u>

First, MHANJ has at all relevant times remained a Lexpath customer and there is no indication that it has reduced its use of Lexpath's service in any way. TT 81:9-82:11. Thus, whether or not Brian made allegedly false or disparaging statements about Lexpath to an administrative assistant at MHANJ is immaterial.

Lexpath cannot support its claim that Brian disparaged its technicians to Liberty and EIMC for three reasons. First, both Paul Hammes of EIMC and Jeff Randolph of Liberty have stated in signed certifications that Brian never made any disparaging statements to them, nor is either aware of disparaging statements made by Brian to any other employees of their organizations. <u>See</u> Hammes Cert., ¶ 12; Randolph Cert., ¶¶ 17-18. Second, neither EIMC or Liberty based their decisions to leave Lexpath in favor of WTS based on the perceived lack of qualifications of Lexpath's other technicians, but rather on business concerns which included a lack of general familiarity with their systems based upon their experiences. <u>See</u> Hammes Cert., ¶¶ 23-28; Randolph Cert., ¶¶ 25-32. Third, Lexpath's

34

disparagement claims with regard to Liberty and EIMC appear based exclusively on inadmissible hearsay. See Part II, *supra*. As such, Lexpath motion for summary judgment with regard to its disparagement should be denied.

XI.   Lexpath is not entitled to summary judgment with regard to its claim under the New Jersey Trade Secrets Act.

Lexpath, in order to prevail on a summary judgment motion for a misappropriation claim arising under the New Jersey Trade Secrets Act, must show that knowledge of a trade secret was obtained through improper means. As Lexpath itself acknowledges, the NJTSA defines "improper means" as including but not limited to theft, bribery, misrepresentation, breach, or inducement of breach, of a duty to maintain the secrecy of a trade secret; espionage, unauthorized access, or other unlawful means. N.J.S.A. § 56:15-2. Notably absent from that list is "knowledge gleaned through years of experience and interaction with clients." This may explain why, as has been pointed out already, see Part VII, *supra*, the New Jersey courts do not require individuals to cordon off some subset of their personal knowledge as untouchable. Family Karate Ctr., Inc., No. A-4904-11T4 at 21-22; Tipton, No. A-1543-12T3 at *20-21; Ingersoll-Rand Co., 542 A.2d at 892.

It is telling that Lexpath makes no mention of how Brian came to possess the alleged trade secrets it accuses him of misappropriating. Quite the contrary, Lexpath acknowledges that Brian acquired his knowledge from years of interaction with customers and in the course of his duties as an employee.TT 113:14-117:5.

Lexpath has put forward no evidence that the alleged trade secrets it accuses Brian of misappropriating were obtained through wrongful means. Since there is no evidence that Brian obtained the information improperly, Lexpath's motion for summary judgment with regard to Count VIII should be denied.

XII.   Lexpath is not entitled to summary judgment with regard to its claim under the New Jersey Computer Related Offenses Act.

The New Jersey Computer Related Offenses Act ("CROA") provides a civil remedy to private parties who have been "damaged in business or property as a result of" certain acts directed at the plaintiff's computer systems. N.J.S.A. § 2A:38A-3. Lexpath alleges that Brian violated three provisions of the CROA: N.J.S.A. § 2A:38A-3(a), (c), and (e). He did not.

A.   Alleged violations of N.J.S.A. § 2A:38A-3(a)

The CROA provides a cause of action to recover damages resulting from:

> The purposeful or knowing, and *unauthorized* altering, damaging, taking or destruction of any data, data base [sic], computer program, computer software or computer equipment…

N.J.S.A. § 2A:38A-3(a). Lexpath alleges two acts by Brian violated this provision. First, it alleges that Brian copied and took valuable information about Lexpath's clients. Second, Lexpath alleges that Brian ran the CCleaner program on the 2e Laptop without authorization. Both allegations are false.

1.   Lexpath has produced no evidence to suggest that Brian copied or took valuable client information from Lexpath's computers.

Lexpath alleges that Brian violated subsection (a) of the CROA "by copying

and taking valuable information about Lexpath's clients . . . without permission."
<u>See</u> Plaintiff's Memorandum of Law, 35. In support of this claim, Lexpath points
to testimony given by Brian at deposition which does not support this proposition,
and an exhibit from Brian's deposition, "Exhibit 19," which is described in Brian's
testimony at deposition as consisting of four files Brian produced from his personal
computers. WT 328:13-329:11, 337:24-341:13. Lexpath was aware that Brian
occasionally used his personal computers in the course of his employment at
Lexpath. WT 360:17-21. Moreover, there is no evidence that any of the three files
were ever "copied and taken" from a Lexpath computer. WT 328:19-341:13.

Because there is no indication that the documents cited by Lexpath to
support this specific claim under Count IX were obtained from a Lexpath computer
system, Brian's possession of the documents cannot form the basis of a claim for a
violation of the CROA. Furthermore, the 2e Laptop is owned by 2e, a separate
business entity.

> 2.    Martin Tuohy authorized Brian to run CCleaner on the 2e
>        Laptop prior to returning it to Lexpath.

As was discussed in Part VII(A), above, there is no evidence that Brian
copied or took valuable client information from Lexpath's computers and Brian
had the consent of Martin Tuohy to use CCleaner on the 2e Laptop and that
Lexpath has not shown that it was damaged by that action, this Court may and
should deny Lexpath's motion for summary judgment with regard to its claim

arising from N.J.S.A. § 2A:38A-3(a). Furthermore, even if the use of CCleaner was a violation of CROA, the violation would give rise to a claim by the owner of the 2e Laptop, 2e, - not Lexpath.

B.   Alleged violation of N.J.S.A. § 2A:38A-3(c)

Subsection (c) of the CROA sets forth a cause of action for damages arising from "the purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network." N.J.S.A. § 2A:38A-3(c). Lexpath alleges that Brian violated this provision by using the 2e Laptop after his resignation from Lexpath. This claim under the CROA must fail because Brian accessed the 2e Laptop with the knowledge and authorization of Martin Tuohy.

As was discussed in Part V(A), above, Martin Tuohy asked Brian for assistance with a number of Lexpath's clients during the days following his resignation. Those projects required Brian to use the 2e Laptop. In light of Lexpath's knowledge and authorization of Brian's use of the 2e Laptop, Lexpath's claim under the CROA must fail.

C.   Alleged violations of N.J.S.A. § 2A:38A-3(e)

Subsection (e) of the CROA provides a cause of action to recover damages resulting from:

> "The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network."

N.J.S.A. § 2A:38A-3(e). Lexpath alleges that Brain violated this provision by (1) accessing the 2e Laptop to obtain client information and (2) by running CCLeaner. As discussed in Part V, above, the portion of the record to which Lexpath cites in support of its claim that Brian wrongfully obtained client information does not provide support for this unfounded allegation; Brian was authorized to use CCLeaner; and Lexpath has sustained no damages as a result of the use of the progam. Accordingly, Lexpath's motion for summary judgment with regard to Count IX of the Complaint should be denied.

XIII.  The counterclaim by Brian Welch and WTS for Lexpath's bad-faith claim under the New Jersey Trade Secrets Act is valid.

The counterclaim by Brian and WTS that Lexpath violated the New Jersey Trade Secrets Act states a valid claim. The NJTSA provides for the award of fees and costs to a party defending an NJTSA claim brought in bad faith. N.J.S.A. § 56:15-6(b). A "bad faith" claim is defined as one which, *inter alia*, "is without any reasonable basis in fact or law." N.J.S.A. § 56:15-6. A misappropriation claim under the NJTSA requires a showing that the trade secret was obtained through improper means, such as theft, bribery or breach of a duty to maintain secrecy. N.J.S.A. § 56:15-2.

Lexpath was aware at the time it filed its Complaint that the knowledge Brian possessed regarding Lexpath's clients and business practices was obtained through proper means.  At deposition, Lexpath admitted that it is unaware of even

single instance in which Brian downloaded, copied or misappropriated Lexpath's trade secrets, confidential information or propriety information without authorization from Lexpath. TT 198:6-23 In fact, Lexpath acknowledged that the information Brian obtained was obtained through the normal course of his fulfilling his duties as a Lexpath technician. TT 121:19-122:9.

Because Lexpath was aware at the time it filed its Complaint that Brian obtained the knowledge of its purported "trade secrets" through means which were in no way improper, its claim in Count VIII that Brian violated the NJTSA was brought in bad faith. Brian and WTS are, therefore, entitled under the statute to the recovery of fees and costs associated with the defense against those claims and Lexpath's request to dismiss the counterclaim should be denied.

## CONCLUSION

For the foregoing reasons, Defendants Brian Welch and Welch Technology Services, LLC respectfully request that this Court deny Plaintiff's motion for spoliation sanctions and summary judgment, and grant Defendants' motion to bar the testimony of Peter Reganato, Allan Feldman, and Digital4NX Group, Ltd.

Respectfully submitted,

**KEMENY, LLC**
*Attorneys for Defendants-Counterclaimants, Brian Welch and Welch technology Services, LLC*

*/s/ Alexander J. Kemeny*
**ALEXANDER J. KEMENY** (AK3438)

40