**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEXPATH TECHNOLOGIES HOLDINGS, INC., <br> *Plaintiff,* <br> v. <br> BRIAN R. WELCH and WELCH TECHNOLOGY SERVICES, LLC, <br> *Defendants.* | Case No.: 13-cv-5379-PGS-LHG <br><br> **MEMORANDUM AND ORDER** |

**SHERIDAN, District Judge.**

The matter before the Court is on the issue of spoliation. On May 9, 2016, the Court held a hearing on the issue. (ECF Nos. 61, 63, and 68). At the hearing, there were five witnesses: Peter Reganato, Allan Feldman, Andrew Donofrio, Martin Tuohy, and Brian Welch. The parties subsequently filed their findings of fact and conclusions of law.

In addition to this testimony, other facts were set forth at the March 22, 2016 oral argument. (ECF No. 57). In brief, in January 2009, 2e Technology Group ("2e") hired Welch as a technical support contractor, and provided him with a laptop (the "Laptop"). (Plaintiff's Response to Defendants' Findings of Fact ("PR"); ECF No. 68, ¶ 1). In January 2013, 2e merged clients with Plaintiff Lexpath Technology Holdings, Inc. ("Lexpath"), and Welch became an employee of both Lexpath and 2e as a network engineer, responsible for installation, care, and maintenance of the computers and network infrastructure of Lexpath clients. (ECF No. 48, ¶ 4). Welch grew dissatisfied at Lexpath, and on August 2, 2013, Welch told Tuohy that he resigned

from the company, and he would start his own business. He also told Tuohy that he sought to bring some Lexpath clients with him, and that he planned to solicit other clients of Lexpath (Defendants' Response to Plaintiff's Findings of Fact ("DR") ECF No. 63-1, ¶ 30). Two Lexpath clients switched over to Welch's new company, Welch Technology Services, LLC ("WTS"). (DR, ¶ 40). Lexpath terminated Welch's access to its email and timekeeping system on the day of his resignation. (PR, ¶ 10). His 2e email account was terminated on or about August 5, 2013. (PR, ¶ 11).

Lexpath sent Welch a "cease and desist" letter on August 6, 2013, requesting that Welch immediately stop poaching Lexpath customers and disparaging Lexpath's reputation. (DR, ¶ 42; ECF No. 39-17). The letter also stated that Welch had formed a competing business in June 2013, that he had obtained the "welchts.com" domain name on May 13, 2014, and that he uses the email address bwelch@welchts.com. The letter noted that his actions exposed him to claims such as breach of duty of loyalty, tortious interference with contractual relations, breach of implied covenant of good faith and fair dealing, unfair competition, misappropriation, disparagement, violation of the New Jersey Computer Related Offenses Act, violation of the New Jersey Trade Secrets Act, and violation of the Computer Fraud and Abuse Act. (ECF No. 39-17). On August 13, 2013, at 5:14 p.m., Lexpath's counsel emailed a proposed settlement offer to Welch's attorney and a notice that Lexpath intended to commence legal action. (PR, ¶ 6). Defendants claim that Welch's attorney contacted Welch about this offer the next day, on August 14. (PR, ¶ 7). On August 14, 2013 at 6:28 p.m., Welch's attorney rejected Lexpath's settlement demand. (PR, ¶ 8).

Defendants claim that Welch continued to do some limited work for Lexpath after his resignation on August 2, 2013 up until sometime on August 6, 2013, but Plaintiff disputes this point. (PR, ¶ 27). Although Plaintiff asserts that after Welch's resignation, Tuohy never gave

Welch permission to delete files from his Laptop or copy files from it, Defendants claim that, at the time of the resignation or shortly thereafter, Welch advised Tuohy that he wanted to "clean up" the Laptop and erase personal data, like banking records and personal information before turning it in. Defendants allege that Tuohy agreed that Welch could clean up the Laptop and said that someone from Lexpath would be in touch. Plaintiff disputes this point, as well. (PR, ¶ 26). Defendants also claim that Tuohy came over to Welch's home after Welch's resignation and picked up a key for one of Lexpath's customers, but did not ask for the Laptop. Plaintiff notes, however, that Tuohy picked up the keys from Welch's mailbox, and not from Welch personally. (PR, ¶ 46). Then, several months went by before Welch received any communications about the Laptop from Lexpath. (DR, ¶ 44).

Upon receiving the Laptop from Welch in March 2014, Lexpath hired Andrew Donofrio of Digital4NX Group Ltd. ("Digital") to conduct a forensic analysis on the Laptop. (DR, ¶ 50). The Court found that Donofrio was a credible witness at the hearing. Donofrio determined that on August 13, 2013, at approximately 10:26 P.M., Welch ran a program called "CCLeaner" on the Laptop, permanently deleting more than 53,000 files from the Laptop and modifying files names to the format "zzzzzzz.zzz," rendering it impossible to determine the names or types of files that had been deleted. Deleted files were also rendered unrecoverable. (DR, ¶ 45). Welch asserts that the IT community uses CCleaner to optimize performance, but Donofrio claims that this level of file destruction is not part of CCleaner's standard functionality, which is to act as an anti-forensics tool to securely eradicate data. (DR, ¶¶ 46-47). The parties agree that after Welch ran CCleaner, he uninstalled the program from the Laptop, and it is not typical for a user to uninstall CCleaner after running it. (DR, ¶ 49). Donofrio also found that three thumb drives had been attached to the Laptop, most recently on August 2, 2013, at approximately 9:35 P.M. Welch has not provided any

thumb drives during discovery. (DR, ¶ 51). Defendants claim that they were never asked to produce thumb drives in discovery, and Defendants assert that Donofrio did not know whether files had been copied from the Laptop onto a thumb drive on August 2. (DR, ¶ 51).

Defendants claim that the 2e email system, which Welch chose to use, unlike the Lexpath email system, did not contain a backup mechanism, so there is no way to recover deleted emails once the "trash folder" is emptied other than locating a remnant or cached version saved locally on a computer hard drive. (PR, ¶ 12). The Laptop would have contained information related to his web-based email, client computer configurations, client computer system types and setups, user names, and passwords. (DR, ¶ 16).

**Analysis**:

Lexpath seeks a spoliation ruling against Defendants due to Welch's use of CCleaner and failure to produce the thumb drives. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Technologies, Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (internal quotations omitted). "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Generally, the burden of proof for a spoliation claim lies with the party alleging spoliation. *See Nwegbo v. Colwyn Borough*, 2013 WL 3479430, *1 (E.D. Pa. 2013). Also, "where there is no showing that the evidence was destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper." *U.S. v. Nelson*, 481 Fed. Appx. 40, 42 (3d Cir. 2012). Furthermore, "no unfavorable inference arises when the

circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.* (internal quotations omitted). If the Court determines that spoliation has occurred, then it must determine the appropriate sanctions. *See Bull*, 665 F.3d at 73, n.5.

The evidence here was clearly in Welch's control, since he possessed the Laptop. There is a question as to whether the data stored on the Laptop was relevant evidence. Defendants argue that Lexpath has not provided any evidence to show that relevant information was destroyed. Defendants claim that most of the deleted information consisted of files describing client computer configurations, user names and passwords, and support requests. (Transcript of Hearing on Spoliation, ECF No. 66 ("T.") 113:17-21). In *Mosaid Technologies*, defendant failed to put a litigation hold in place for a patent case and emails were automatically deleted. 348 F. Supp. 2d at 333. The Third Circuit determined that it was sufficient for plaintiff to provide an affidavit testifying to the company's extensive use of email and the general subject matter of company emails. *Id.* at 336. Similarly here, Lexpath provided testimony that the documents deleted could be relevant. (T. 112:25-116:2; 117:4-11). Tuohy, one of Lexpath's principals, testified that the destruction of 53,000 files must have included remnants of emails and webmails, electronic communications, website access history, browsing history, and internet chats pertinent to the customers that Welch was assigned. (T. 112:25-113:35). Moreover, Plaintiff argues that this information could be relevant to solicitation claims and disparagement claims, as well as to allegations that Welch utilized trade secrets and confidential information. The Court finds that that the relevance prong is satisfied. Welch's testimony that his intent was to clean up the Laptop and remove personal data lacked credibility in light of the timing of his actions and his motivation to acquire business from Lexpath's customers.

The duty to preserve was also reasonably foreseeable. The duty to preserve is objective, and based on the reasonable foreseeability that such information would be requested in discovery. *Bull*, 665 F.3d at 78, n. 12. This is a "flexible, fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* (quoting *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). Plaintiff sent a letter to Defendants on August 6, 2013 requesting that Welch stop pursuing Lexpath's clients and stop disparaging Lexpath, and notified Welch of Lexpath's intention to litigate, and enumerated the claims that Lexpath would bring, including claims for violation of the federal Computer Fraud and Abuse Act and the New Jersey Computer Related Offenses Act. (ECF No. 39-17). Then on August 13, 2013 at 5:14 p.m., Lexpath sent Welch's attorney, Edward Shamy, an email described as a "final settlement offer." (T. 98:20-24). The letter gave Welch 24 hours to respond. (PR, ¶¶ 6, 42). Welch claims that he did not learn of this communication until the following day. (T. 124:7-14; 137:4-17). Five hours later, Welch deleted the emails. (T. 124:15-20). The timing of this deletion is highly suspect, even though Welch thought this was just a "coincidence." (*Id*). But even if the Court were to believe Welch that he never saw this offer, he was still aware of the potential claims against him from the August 6, 2013 letter.

Defendants also claim that it was not reasonably foreseeable that "junk files" would be necessary for litigation. However, as, previously mentioned, these files are most likely relevant. There was testimony that the deleted files could be useful to recover internet history, web chats, and emails, among other things. (T. 66:8-67:12; 112:25-113:25). The Defendants assert that their claim of spoliation was also unforeseeable, because Lexpath never attempted to take possession of the Laptop in the 11 days between Welch's resignation and August 13, even though he

6

discussed the Laptop with Tuohy. (T. 138:10-22; 134:6-21). Tuohy did not even ask for the Laptop when he stopped by Welch's house to pick up keys, according to Defendants. However, there is no requirement that Plaintiff formally make such a request at that time. (DR, ¶ 44). The requirement is only that Defendants begin to preserve such documents as soon as the duty to preserve is reasonably foreseeable, which should have been by the August 6 letter. Also, Plaintiff claims that Tuohy picked up the keys from Welch's mailbox, not from Welch himself. (PR, ¶ 46).

The final requirement for a spoliation finding is that the evidence actually be suppressed or withheld. Defendants claim that many of the email communications that Lexpath is requesting were already in its possession or were available from third parties and could be obtained by subpoenas. At the hearing, Tuohy testified that he reviewed and obtained emails from Welch's 2e email account through the Rackspace server, to which it has direct access. (T. 81:19-84:4; 102:14-103:19; 114:14-19). Also, Tuohy testified that Lexpath had the ability to access Welch's email account in the same way. (T. 103:12-19). In response, Plaintiff claims that it is not only seeking information from the emails, but from the files on the Laptop. Moreover, Lexpath claims that it could not recover deleted emails from Welch's 2e email account anyway, and Welch rarely used his Lexpath email. (PR, ¶¶ 12-14). Lexpath also objects to the suggestion that it could simply seek subpoenas, because Lexpath could not determine with whom Welch was exchanging emails, and this would be a time-consuming fishing expedition. The Court agrees with Lexpath that it should not have to subpoena third parties to find this information. Also, simply because Lexpath may have possession of some of the relevant documents, does not mean that it should not be entitled to the rest of the documents.

Based on the above information, a spoliation finding is warranted. The next issue concerns the appropriate sanctions.

Rule 37(e) of the FED. R. OF CIV. P., which relates to the spoliation of electronically stored information ("ESI") and was amended as of December 1, 2015, provides:

> **e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> **(A)** presume that the lost information was unfavorable to the party;
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
> **(C)** dismiss the action or enter a default judgment.

Chief Justice Roberts explained that, "the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." 2015 US Order 0017. This case commenced in September 2013, and the alleged act of spoliation occurred about a month earlier. That being said, the Rule does not seem to have altered the burden on the party moving for sanctions in this Circuit, as any adverse inference still requires a showing that ESI was destroyed in "bad faith." *Accurso v. Infra-Red Services, Inc.*, 2016 WL 930686, at *3, n. 6 (E.D. Pa. March 11, 2016), citing *Bull*, 665 F. 3d at 79. As such, the Court will apply this Rule.

Therefore, the Court must determine whether Defendants "acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e).

8

Defendants argue that there is no indication of "bad faith" or "intent to deprive" here, because CCleaner is meant to optimize performance and remove temporary system files, like "cookies," junk files, and user names and passwords. (T. 36:10-12; 128:10-11). Lexpath and 2e had used CCleaner to optimize and billed for use of CCleaner with clients to improve performance. (T. 105:16-106:17; 107:21-112:18). Welch had used CCleaner for that reason since the early 2000s. (T. 128:12-16).

Plaintiff contends that CCleaner is also used to securely destroy data, and it is used as an "anti-forensic tool." (T. 36:10-15). Plaintiff also notes that the level of file destruction that occurred here exceeds CCleaner's standard settings and functionality. (T. 36:22-37:5). The Court acknowledges that it does appear that CCleaner can be used both for optimization and for eradication of data, and that Lexpath, 2e and Welch apparently billed clients for use of this program. Nevertheless, both parties agree that it is not typical for a user to uninstall CCleaner after running it as Welch did here. (DR, ¶ 49). It is also clear that 53,000 files were destroyed soon after Plaintiff informed Defendants of its intent to litigate. (DR, ¶ 45). Welch is an information technology professional, and based on his knowledge and use of CCleaner with clients, he was well aware of the program's capabilities, and how it could be used to destroy files permanently.

One of the main issues that the Court struggled with when reviewing the original summary judgment motions, was whether Tuohy gave Welch permission to "clean up" the Laptop before returning it. Plaintiff and Tuohy categorically denied this allegation, and the hearing was no more successful at clearing up this dispute. At the hearing, Welch testified that he asked Tuohy if he should clean up the Laptop before returning it, and on August 2, Tuohy agreed

that he should. (T. 138:10-22). Tuohy testified that he did not authorize Welch to copy or delete 53,000 files from the Laptop following his resignation. (T. 94:21-95:4).

It is not clear from the hearing that Welch had permission to clean up the Laptop. It seems highly improbable that Tuohy would agree to such a request after Welch had just taken some of Lexpath's clients, and following the deterioration of the relationship between the two. About 53,000 documents were destroyed. While the Court will not speculate on how many of those files were directly relevant to the allegations in this action, Plaintiff has provided sufficient testimony to show that there were relevant documents. The timing of the deletion—a few days after Plaintiff sent its cease and desist letter, which also informed Defendants of the potential claims against them—is especially telling.

When imposing spoliation sanctions, courts consider, "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 152 (D.N.J. 2009) (*citing Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

As the Third Circuit instructed, courts should consider "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid*, 13 F.3d at 79. The second option under Rule 37(e)—"instruct the jury that it *may*...presume the information was unfavorable to the party"—is the least severe of the three, and the Court will adopt it. This remedy seems most appropriate and will allow the jury to consider it in their deliberation.

## ORDER

For the reasons stated herein and for good cause shown,

**IT IS** on this 30th day of August, 2016,

**ORDERED** that Plaintiff's motion for spoliation (ECF No. 63) is GRANTED, and the Court will instruct the jury that they may presume that the lost information was unfavorable to Defendants.

PETER G. SHERIDAN, U.S.D.J.