## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**LEXPATH TECHNOLOGIES HOLDINGS, INC.,**

    Plaintiff,

  v.

**BRIAN R. WELCH and WELCH TECHNOLOGY SERVICES, LLC,**

    Defendants.

**Case No.: 13-cv-5379-PGS-LHG**

*Document Electronically Filed*

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS

---

Alexander J. Kemeny, Esq. (AK3438)
Meir S. Kalish, Esq. (161332015)
**KEMENY, LLC**
7-G Auer Court
Williamsburg Commons
East Brunswick, New Jersey 08816
Tel: (732) 853-1725
Fax: (732) 853-1730
*Attorneys for Defendants-Counterclaimants Brian Welch and Welch Technology Services, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................. 16

   I)   The Court should award Defendants their attorney fees and costs pursuant to the New Jersey Trade Secrets Act, the Federal Rules of Civil Procedure, and the District of New Jersey Local Rules. ................................................................................................. 16

   II)   The Defendants attorneys' fees are presumed reasonable under the "lodestar" method of calculating counsel fees. ................................................................................... 16

     A.   The hourly rates of Defendants' attorneys are reasonable. .................................. 17

     B.   The number of hours expended by Defendants' attorneys is reasonable. ........... 19

     C.   The full amount of attorney fees incurred, including any amounts paid by an insurer, are recoverable. .................................................................................................. 21

     D.   The Court should award Defendants all of their reasonable attorney fees paid because Lexpath's claims involve a common core of facts and are based on related legal theories. ...................................................................................................................... 23

     E.   Alternatively, should the court limit the award of fees to those incurred in defending against the trade secrets claim, an allocation based upon percentages is appropriate. ...................................................................................................................... 26

     F.   At least 40 percent of the fees incurred by Welch and WTS were incurred to defendant against the claim that they misappropriated trade secrets. ......................... 28

     G.   The costs incurred by Defendants are reasonable. ............................................... 37

   III)   The reasonableness of the attorneys' fees incurred is supported by the offer of judgment and settlement offers that were rejected by Lexpath. ...................................... 38

CONCLUSION ............................................................................................................. 40

# TABLE OF AUTHORITIES

## Cases

Couch v. Drew, 554 So. 2d 1185 (Fla. Dist. Ct. App. 1989) ........................................................ 21

Griffith v. United States, No. CIV. A. 87-1665, 1989 WL 150931, at *1 (E.D. Pa. Dec. 11, 1989) ................................................................................................................................................. 22

Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ........................... 25

Hensley v. Eckerhart, 461 U.S. 424, 435–40, 103 S. Ct. 1933, 1940–43, 76 L. Ed. 2d 40 (1983) ................................................................................................................................................. 23

Hough v. Huffman, 555 So. 2d 942 (Fla. Dist. Ct. App. 1990) ............................................... 21, 22

In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 132 (D.N.J. 2002) ..................................... 18

Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001) ....................................................... 16, 17

Lohman v. Duryea Borough, 574 F.3d 163 (3d Cir. 2009) .......................................................... 38

Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC, 739 F. Supp. 2d 125, 135 (D. Conn. 2010) ................................................................................................................................................. 39

Oh v. AT & T Corp., 225 F.R.D. 142, 153 (D.N.J. 2004) ........................................................... 17

Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990) ......................................................... 16, 17

## Statutes and Rules

District of New Jersey Local Civil Rule ("Local Rule") 54.1 and 54.2 .................................... 1, 16

Fed. R. Evid. 408 ........................................................................................................................ 38

N.J.S.A. § 56:1-1 .......................................................................................................................... 1

N.J.S.A. § 56:15-6 ................................................................................................................... 4, 16

## PRELIMINARY STATEMENT

Defendants–Counterclaimants, Brian Welch ("Welch") and Welch Technology Services, LLC ("WTS") seek to recover from Lexpath Technologies Holdings, Inc. ("Lexpath") reasonable attorney fees and costs, pursuant to the New Jersey Trade Secrets Act ("NJTSA"), N.J.S.A. § 56:1-1 – *et seq.*, Fed. R. Civ. Pro. 54(d), and District of New Jersey Local Civil Rule ("Local Rule") 54.1 and 54.2.

The jury's verdict in favor of Welch and WTS included a finding that Lexpath's claim of misappropriation was brought in bad faith. Because all of the claims brought by Lexpath are part of a common nucleus of facts and eight out of nine counts in Lexpath's complaint are based on Welch and WTS's alleged misappropriation of trade secrets and confidential information, Welch and WTS should be awarded all of the fees they incurred. Defendants thus seek an Order entering judgment against Lexpath and in favor of Defendants in the amount of $225,276.00 for attorneys' fees and $5,288.86 for costs.

Alternatively, should the court choose to limit the fee award to work performed that was reasonably necessary to defend against Lexpath's trade secrets claim, Defendants' request that an award be entered in the amount of $90,110.40 for legal fees, plus costs in the amount of $5,288.86.

The Court had denied without prejudice Welch and WTS's prior motion for attorney's fees and costs and entered an Order allowing them to renew their motion

1

after the appeal in this matter had been decided by the Third Circuit.  The Third Circuit has affirmed this Court's judgment.  By way of this motion, Welch and WTS seek to recover fees and costs incurred in the trial court proceedings.  Welch and WTS have filed a separate application in the Court of Appeals for the Third Circuit seeking to recover the attorney's fees incurred on appeal, as per the Federal Rules of Appellate Procedure and the Third Circuit Local Rules.

## STATEMENT OF FACTS

On September 9, 2013, Lexpath filed a nine-count complaint against Welch and WTS, alleging among other things, that Welch and WTS violated the New Jersey Trade Secrets Act.  All but one of the nine counts in Lexpath's complaint were based in part or entirely on Welch and WTS's alleged misappropriation of trade secrets and confidential information.  (Declaration of Alexander J. Kemeny in support of Motion for Attorneys' Fees and Costs ("Kemeny Declaration") ¶ 20.)

The eight counts in Lexpath's complaint that were based in part or in whole on Welch and WTS's alleged misappropriation of trade secrets and confidential information are as follows:

    i.    In Count I, Lexpath claimed that Welch violated the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 by accessing Lexpath's computers and unlawfully obtaining information to gain a commercial advantage or in furtherance of their other tortious activities. (See Exhibit "G" to the Kemeny Declaration, ¶¶ 48-49).

2

ii.   In Count II, Lexpath alleged that Welch violated the duty of loyalty he owed to Lexpath by, among other things, "utilizing and/or disseminating Lexpath's Confidential Infomation." (See Id., ¶ 88).

iii.  In Count III, Lexpath brought a claim under the common law for misappropriation of trade secrets. (See Exhibit "G" to the Kemeny Declaration, Count III).

iv.   In Count IV, Lexpath alleged that Welch and WTS engaged in unfair competition by misappropriating or wrongfully using trade secrets and confidential information. (See Id., ¶ 65).

v.    In Count V, Lexpath claimed that Welch violated the implied covenant of good faith and fair dealing that arose from his oral employment agreement with Lexpath by engaging in the "unlawful conduct mentioned above" in the Complaint, which included the alleged misappropriation of trade secrets and confidential information. See Id., ¶ 70.

vi.   In Count VI, Lexpath alleged that Welch and WTS engaged in tortious interference with a prospective economic advantage by, among other things, "depriving Lexpath of the exclusivity of its Confidential Information and trade secrets." (See Id., ¶ 73).

vii.  In Count VIII, Lexpath alleged that Welch and WTS violated the New Jersey Trade Secrets Act, N.J.S.A. § 56:1-1 – *et seq.* (See Id., ¶ 86).

viii. In Count IX Lexpath alleged that Welch misappropriated Lexpath's trade secrets and confidential and proprietary information, by wrongfully accessing Lexpath's computer systems and downloading or otherwise copying trade secrets and confidential information.

(See Exhibit "G" to the Kemeny Declaration, ¶ 88).

Count VII of Lexpath's complaint was the sole count that made no reference to the alleged misappropriation of trade secrets or confidential information.  In Count VII of its Complaint, Lexpath asserted that it was damaged as a result of

disparaging statements made by Welch. (See Exhibit "G" to the Kemeny Declaration ¶ 76-81).  However, at trial, Lexpath failed to introduce any admissible evidence showing a disparaging statement made by Welch.  (Kemeny Declaration ¶ 22.)  Lexpath neither produced a document in support of this claim nor did it introduce a single witness to testify that he heard Welch make such a disparaging statement.  (Id. ¶ 23)

On October 3, 2013, Welch and WTS filed an Answer, Affirmative Defenses, and a Counterclaim seeking an award of legal fees and costs against Lexpath under N.J.S.A. § 56:15-6 of the New Jersey Trade Secrets Act, which allows for an award of attorney's fees and costs when a claim has been brought against a defendant in bad faith.

In their Counterclaim, Welch and WTS asserted:

a.   that on each occasion that Welch accessed information belonging to Lexpath his accessed, he was authorized by Lexpath to access the information;

b.   Welch never misappropriated any of Lexpath's trade secrets;

c.   Lexpath's claim of misappropriation under the New Jersey Trade Secrets Act was made solely for the purpose to harass or injure Welch and WTS;

d.   Lexpath has no factual basis to support its claim that Welch misappropriated trade secrets;

e.   Lexpath's claim of misappropriation under the New Jersey Trade Secrets Act was made in bad faith; and

4

      f.     that under to N.J.S.A. § 56:15-6, Welch and WTS could recover reasonable attorney's fees and costs, including a reasonable sum to cover the service of expert witnesses who may be retained, because Lexpath has made a claim of misappropriation of trade secrets in bad faith.

          See Exhibit "H" to the Kemeny Declaration, pgs. 12-13.

On October 23, 2013, Lexpath filed an Answer to the Counterclaim.  In its Answer to the Counterclaim, Lexpath asserted that every allegation made by Welch and WTS in their Counterclaim was a conclusion of law which required no responsive pleading, but to the extent that allegations were deemed factual, they were denied. (See Exhibit "I" to the Kemeny Declaration, pgs. 1-2)

During discovery, interrogatories were served upon Lexpath seeking more information about Lexpath's claim that Welch and WTS misappropriated Lexpath's trade secrets and confidential information.  (Kemeny Declaration ¶ 30.) After receiving Lexpath's initial answers to Welch and WTS's interrogatories, Defendants' counsel, Alexander J. Kemeny ("Mr. Kemeny"), wrote a letter to Lexpath's counsel dated March 26, 2014, advising that Lexpath's answers to interrogatories were deficient and lacked any factual information to support its misappropriation of trade secrets claims.  (Id. ¶ 31)  In the letter, Mr. Kemeny advised Lexpath's legal counsel that Lexpath's "unresponsive replies to [Defendants'] discovery requests only provide further indication that [Lexpath's]

claims were brought in bad faith."  (See Id. ¶¶ 32-35 and Exhibit "J" to the Kemeny Declaration).

On August 19, 2015, Mr. Kemeny took the deposition of Lexpath's principal and corporate representative, Martin Tuohy.  At the deposition, Mr. Kemeny asked Mr. Tuohy whether Lexpath knows "of any instances in which Brian downloaded, copied or misappropriated Lexpath's trade secrets, confidential information or proprietary information." (Kemeny Declaration ¶ 37; Exhibit K to the Kemeny Declaration, 198:6-9.)  Mr. Tuohy responded: "Not that I'm aware of." (Id. ¶ 38; Exhibit K to Kemeny Declaration, 198:23)

### The hourly rates charged by Defendants' counsel in this matter.

From August 7, 2013, until September 17, 2013, Welch and WTS were represented by Edward P. Shamy, Jr. Esq. ("Mr. Shamy") of the Edward P. Shamy, Jr. Law Offices.  (Kemeny Declaration ¶ 39.)  The hourly rate charged by Mr. Shamy during that period started at $300.00 per hour but was lowered to $275 per hour.  (Id. ¶ 40.)  The vast majority of Mr. Shamy's time was billed at $275 per hour.

On September 17, 2013, Welch and WTS entered into a written free agreement with Mr. Kemeny's firm at the time, Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C. and Mr. Shamy.  Pursuant to the fee agreement, Welch and WTS were to be charged $275.00 per hour for Mr. Kemeny's time, $275.00 per

6

hour for Mr. Shamy's time, and between $250.00 to $400.00 per hour for the time of any other attorneys at Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.. (Kemeny Declaration ¶¶ 43,44).

In or around March 2014, Hiscox Insurance Company Inc. ("Hiscox") undertook the duty to defend WTS in this action with a reservation of rights. Hiscox then offered to either retain new counsel for WTS and Welch or to pay litigation costs and a portion of the present counsel's legal fees, based upon an hourly rate schedule that was below the rates charged by Welch and WTS' counsel.  (See Kemeny Declaration ¶¶ 45-52.)

The hourly rates Hiscox offered to pay on behalf of WTS were $225.00 per hour for Mr. Shamy's time, $195.00 per hour for my time and the time of any associate, and $125.00 per hour for work performed by paralegals or law clerks. (Kemeny Declaration ¶ 53.)

At the time, Mr. Kemeny had been representing Welch and WTS for over six months and was very familiar with the legal claims and facts of this case. Welch and WTS elected to continue the use of their attorneys and to pay the portion of legal fees and costs that would not be paid for by Hiscox. As such, the rates charged for attorney time remained the same as they were before Hiscox undertook its duty to defend WTS.

In October of 2014, Mr. Kemeny left Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C. and opened Kemeny, LLC. Welch and WTS decided to continue using Mr. Kemeny's services and retained his new firm. (Kemeny Declaration ¶ 56).

Pursuant to Kemeny, LLC's agreement with Welch and WTS, the hourly rate for Mr. Kemeny's time remained $275.00 per hour, the rate for associates was $195.00 per hour, and the rate for law clerks was $125.00 per hour.  (Kemeny Declaration ¶ 57).

The standard hourly rate for associates at Kemeny, LLC is $215.00 per hour. The fee rate charged by Kemeny, LLC for associate and law clerk time in this matter has been $195.00 and $125.00 per hour respectively.

**The time spent by Defendants' Counsel on this matter**

The time Defendants' counsel spent on this complicated and time-consuming matter included the following work:

a.  An Answer to the nine-count Complaint and Affirmative Defenses were prepared and filed. The task required consultation with the clients, a review the Complaint, and legal research to address each of the nine counts set forth in Lexpath's Complaint.

b.  A Counterclaim was filed along with Welch and WTS' Answer to the Complaint. The Counterclaim sought an award of attorneys' fees and costs because Lexpath had brought suit under the New Jersey Trade Secrets Act in bad faith. Preparing the Counterclaim required research and a certain level of creativity because defendants of a lawsuit in the United States are only entitled to an award of counsel fees and costs in limited situations, such as when a contract provides for such an award,

court rules allows for the award or, in a case like this, where it is authorized by statute.

c.  A Joint Discovery Plan was prepared and agreed upon with Lexpath's counsel.

d.  Initial disclosures were prepared on behalf of Welch and WTS.

e.  Lexpath's initial disclosures were reviewed.

f.  An initial pretrial conference as well as other conferences took place with Magistrate Judge Goodman.

g.  Interrogatories, a demand for documents, and a request for admissions was prepared.

h.  Responses were prepared for Lexpath's interrogatories and demand for documents.

i.  Lexpath's discovery responses were received and reviewed.

j.  Discussions were had with Lexpath's counsel about the deficient nature of Lexpath's discovery responses.

k.  Supplemental discovery responses from Lexpath were received and reviewed.

l.  A mediation statement was prepared and a mediation took place with the Hon. Harriet E. Derman (ret.).

m.  A settlement statement was provided to Margistrate Judge Goodman and multiple settlement conferences took place with Judge Goodman.

n.  Documents were received as a result of subpoenas issued by Lexpath to Liberty Transportation and EIMC were received and reviewed.

o.  Subpoenas were prepared and issued on behalf of Welch and WTS to Liberty Transportation and EIMC.

p.   A motion to quash Welch and WTS' subpoenas to Liberty Transportation and EIMC was received and reviewed. A successful opposition to the motion was then prepared and filed on behalf of Welch and WTS.

q.   A response to the subpoenas issued on behalf of Welch and WTS to Liberty Transportation and EIMC were received and reviewed.

r.   Welch's was represented when his deposition was taken.

s.   The deposition of Lexpath's principal and corporate designee, Martin Tuohy, was taken.

t.   A motion for summary judgment and spoliation sanctions filed by Lexpath was reviewed.

u.   In response to Lexpath's motion for summary judgment, an objection and cross-motion for summary judgment, judgment on the pleadings, and in limine was prepared, filed, and argued.

v.   On May 9, 2016, after oral argument on the motion and cross-motion were heard, this court held an in limine hearing and spoliation hearing.

w.   After this court entered an in limine order excluding the testimony of Allan Feldman and Peter Reganato from trial, Lexpath filed a motion for reconsideration. Opposition to that motion was prepared, filed, and argued.

x.   A proposed form of a Final Pretrial Order was negotiated and prepared with Lexpath's counsel and Final Pretrial Conference took place.

y.   Motions in limine, a trial brief, proposed jury instructions, and proposed jury voire dire questions were prepared and filed.

z.   Preparations were made for trying the case, including time spent preparing exhibits and preparing outlines for the examination and cross-examination of witnesses.

In preparing for trial a significant portion of time was spent in preparing for the cross-examination of Lexpath principal Martin Tuohy and Lexpath's computer forensic expert, Andrew Donofrio. The time spent on these tasks was critical for success at trial and ultimately resulted in the jury finding against Lexpath on each of Lexpath's claims and in favor of Welch and WTS on their counterclaim by deciding that Lexpath had brought its claim under the New Jersey Trade Secrets Act in bad faith.  (Kemeny Declaration ¶ 66).

The case was tried successfully over the course of seven days, during which time, Lexpath called seven witnesses, including an economic expert and computer forensic expert. The sole witness called on behalf of Welch and WTS was Welch, who testified for a total of about an hour.  (Kemeny Declaration ¶ 66).

From the time that Lexpath filed its complaint on September 9, 2013, until the filing of this motion, more than four years had passed and 1,011.2 hours of attorney time were spent defending Welch and WTS before the trial court. (Kemeny Declaration ¶ 68).

**Defense Counsel's efforts to minimize their legal fees and costs.**

In an effort to keep fees and costs low, only one deposition was taken on behalf of Welch and WTS. The sole individual deposed by counsel for Welch and WTS was Martin Tuohy, a principal of Lexpath who was designated by Lexpath as its corporate designee.

11

Upon the advice of counsel, Welch and WTS elected not to take the deposition of the experts Lexpath had retained for trial, an economic expert by the name of Joseph P. Cipolla, Jr., CPA/ABV/PFS/CFF, CFE from Cipolla & Co., L.L.C. and a computer forensic expert, Andrew Donofrio of Digital4NX Group.

Where appropriate, work was performed by an associate at Kemeny, LLC at an hourly rate of $195, nearly 30 percent less than the hourly rate charged for Mr. Kemeny's time ($275 per hour) on this matter.  (Kemeny Declaration ¶ 74).

At times, both an associate and Mr. Kemeny were present for a conference, court hearing, client meeting, or deposition, but Welch and WTS were only charged for the time of one attorney.  (Kemeny Declaration ¶ 75).

A choice was also made that Mr. Kemeny would try the case without an associate so as to reduce legal fees. Although Mr. Kemeny had significant help from his former associate, Geoffrey T. Blackwell, and current associate, Meir S. Kalish, in preparing the case for trial, Mr. Kemeny tried the case without the help of another attorney during the seven days of trial, while Lexpath had two attorneys present at counsel's table throughout the trial. (Some assistance with legal research was provided to Mr. Kemeny during one evening after one of the trial days.) (Kemeny Declaration ¶ 76).

It is the practice of Mr. Kemeny's office to review invoices before they are finalized and approved. During that process, the time spent performing tasks is

reviewed to ensure that the time spent was appropriate and reasonable. On occasion, Mr. Kemeny will remove a charge or reduce a charge for time spent on tasks to ensure that clients are not charged more than reasonable for the work performed.  (Kemeny Declaration ¶ 77).

In this matter, Mr. Kemeny removed a total $9,481.75 in fees from the clients' invoices to avoid charging for more than one attorney from the firm when two were present and to avoid charging fees for more time than was reasonable for the completion of tasks. (Kemeny Declaration ¶ 78).

### Defendants' efforts to settle the case and avoid legal fees and costs

In an effort to keep Welch and WTS' legal fees and costs low, Welch and WTS along with its attorneys made repeated efforts to settle the case, both through the use of a professional mediator, (retired) Judge Harriet Derman, and Magistrate Judge Lois Goodman.

In addition to mediation with Judge Derman and settlement conference with Judge Goodman, significant efforts were made through direct communication with Lexpath's counsel to settle the case to avoid legal fees and costs. These efforts began even before suit was filed and continued until just a few days before trial. (Kemeny Declaration ¶ 80).

On July 21, 2014 (four years ago), Welch and WTS made an offer of judgment under Fed. R. Civ. P. 68, offering to allow entry of a judgment in favor

Lexpath against Welch and WTS in the amount of $120,000.00, in full resolution of Lexpath's claims. (See Exhibit "L" to the Kemeny Declaration.)

Mr. Kemeny also advised in his letter of July 21, 2014, that, in addition to the offer of judgment for $120,000.00 that was being made, Welch and WTS were offering to pay $200,000.00 over time with $100,000.00 being paid immediately and another $100,000.00 being paid over the course of ten years. (See Exhibit "L" to the Kemeny Declaration.)

The offer of judgment and settlement offers made by Welch and WTS were rejected by Lexpath.  (Kemeny Declaration ¶ 85).

### The success of Defense counsel

Trial in this matter began on Monday, June 12, 2017 and concluded with a jury verdict on Wednesday, June 21, 2017.  On each of Lexpath's claims that were submitted to the jury, the jury found in favor of Welch and WTS and returned a verdict that Welch and WTS had no liability for the claims brought against them by Lexpath. The jury also found that Welch and WTS had proven that Lexpath asserted its claim for misappropriation of trade secrets without factual basis or solely to harass or maliciously injure Welch or WTS.

On June 21, 2017, the court entered a judgment against Lexpath and in favor of Welch and WTS, dismissing Lexpath's complaint, and entering judgment for Welch and WTS on their counterclaim against Lexpath.

On July 21, 2017,  Lexpath appealed the judgment to the Third Circuit Court of Appeals.  On the same day, Welch and WTS filed a motion for attorney's fees and costs based on their counterclaim.   By Order dated February 22, 2018, the court ruled that it would "await the decision by the Third Circuit Court of Appeals before deciding the motion for attorney's fees and costs."  (ECF Doc. 146)  On July 30, 2018, the Third Circuit affirmed the District Court's judgment.  This motion for attorney's fees and costs followed.

## ARGUMENT

**I)     The Court should award Defendants their attorney fees and costs pursuant to the New Jersey Trade Secrets Act, the Federal Rules of Civil Procedure, and the District of New Jersey Local Rules.**

Defendants should be awarded their reasonable attorney fees and costs under N.J.S.A. § 56:15-6.  The New Jersey Trade Secrets Act allows a court to award reasonable attorney's fees and costs to a defendant if a claim of misappropriation is made in bad faith. N.J.S.A. § 56:15-6. Here, the parties agreed that the jury should determine whether Lexpath's claim of misappropriation was made in bad faith and, if they do find that the claim was made in bad faith, the Court should determine the amount of attorney's fees and costs that Lexpath must pay the Defendants.

The jury found that Lexpath's claim of misappropriation was made in bad faith. (See Exhibit "M" to the Kemeny Declaration).  Defendants should thus be awarded their reasonable attorneys' fees and costs.  Defendants, as the prevailing party, are also entitled to their costs under Fed. R. Civ. Pro. 54(d) and Local Rule 54.1.

**II)     The Defendants attorneys' fees are presumed reasonable under the "lodestar" method of calculating counsel fees.**

The Third Circuit recognizes the "lodestar" method for determining an award of attorney's fees. Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001); Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990).  "A lodestar award is calculated by multiplying the number of hours he or she reasonably worked on a client's case by a reasonable hourly billing rate for such services given the

16

geographical area, the nature of the services provided, and the experience of the lawyer." Oh v. AT & T Corp., 225 F.R.D. 142, 153 (D.N.J. 2004). The lodestar amount is presumed to be the reasonable fee. Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).

The fee applicant has the initial burden of proving that its fee request is reasonable by submitting evidence of the number of hours worked and the hourly rate claimed. Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990). The party opposing the fee award then has the burden of challenging the reasonableness of the fee requested by affidavit or brief sufficiently specific to give the applicant notice of the challenge. Id.

The total fee requested by Welch and WTS  – $225,276.00 – was calculated using the lodestar method, namely by multiplying the number of hours that each of Defendants' attorneys worked successfully defending Welch and WTS by the hourly billing rate of the attorney performing the work, and then aggregating the total attorney fees for each attorney.  Defendants' attorney fees in the amount of $225,276.00 are thus presumptively reasonable.

### A.    The hourly rates of Defendants' attorneys are reasonable.

An hourly rate is reasonable if it is consistent with the prevailing market rates in the relevant community. Id. This requires an assessment of the experience and skill of the applicant's attorneys and a comparison of their rates to the rates

prevailing in the community in which the attorneys practice for similar services provided by attorneys of similar skill, experience, and reputation. Id. Defendants' counsel's efforts in efficiently bringing this litigation to a successful conclusion are the best indicator of the experience and ability of the attorneys involved. In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 132 (D.N.J. 2002) ("the single clearest factor reflecting the quality of counsels' services . . . are the results obtained.").

Here, the hourly rates of Defendants' attorneys are reasonable.  The hourly rate of Mr. Shamy started at $300 per hour but was then lowered to $275 per hour. (Kemeny Declaration ¶¶ 40,44.)  The vast majority of Mr. Shamy's time was billed at $275 per hour.  (See Id.)  Mr. Shamy is an excellent sole practitioner attorney with a busy firm based in North Brunswick, New Jersey, and he has been admitted to the practice of law in New Jersey since 1982.  (Kemeny Declaration ¶¶ 40,41). Mr. Shamy's rate of $300 per hour – and certainly his decreased rate of $275 per hour – was fair, reasonable, and below what is charged by many other attorneys with similar experience.

The hourly rate of Mr. Kemeny in this matter was only $275 per hour, below the prevailing market rates. Mr. Kemeny has been admitted to practice law in the State of New Jersey since 2009, the Federal District Court of New Jersey since 2010, and the State of New York since 2013.  (Kemeny Declaration ¶ 58.)  Since

18

2010, Mr. Kemeny has been an adjunct professor at the Rutgers School of Law since 2010.  (Id. ¶ 59)  He has also lectured to other attorneys at continuing legal education seminars through the Middlesex County Bar Association. (Id. ¶ 60.)  His hourly rate of $275 in this matter is fair and reasonable.

Since 2013, when complaint in this matter was filed until today, Mr. Kemeny's standard hourly rate has increased from $275.00 per hour to $325.00 per hour.  (Id. ¶ 61.) These rates and the increases have been fair and reasonable. However, the hourly rate charged to Welch and WTS has remained $275.00 per hour throughout the nearly four-years that Mr. Kemeny has represented Defendants.

The standard hourly rate for associates at Kemeny, LLC is $215.00 per hour. The fee rate charged by Kemeny, LLC for associate and law clerk time in this matter has been $195.00 and $125.00 per hour respectively.  (Id. ¶ 62).  The firm's hourly rates for legal services in this matter are reasonable.

### B. The number of hours expended by Defendants' attorneys is reasonable.

Counsel for Welch and WTS spent a total of 1,011.2 hours, excluding time spent on appeal, successfully defending Welch and WTS in this matter.  During the course of this action, Defendants' counsel prepared the following documents: an Answer to the nine-count Complaint, Affirmative Defenses, a counterclaim, a Joint Discovery Plan, initial disclosures, interrogatories, demand for documents,

requests for admissions, mediation and settlement statements, subpoenas, opposition to Lexpath's motion to quash, opposition to Lexpath's motion for Summary Judgment and spoliation sanctions, cross-motion for summary judgment and judgment on the pleadings, opposition to Lexpath's motion for reconsideration, Final Pretrial Order, motions in limine, trial brief, proposed jury instructions, and proposed voire dire questions.

Defendants' counsel also attended various oral arguments and conferences, including multiple settlement conferences with Margistrate Judge Goodman and multiple settlement conferences took place with Judge Goodman.

Defendants' counsel also spent time preparing for trial, including preparation for the cross-examination of Lexpath principal Martin Tuohy and Lexpath's computer forensic expert, Andrew Donofrio. The time spent on these tasks was critical for success at trial and ultimately resulted in the jury finding against Lexpath on each of Lexpath's claims and in favor of Welch and WTS on their counterclaim by deciding that Lexpath had brought its claim under the New Jersey Trade Secrets Act in bad faith.

In light of the all the work performed during more than four years of litigation, the total hours expended by Defendants' counsel is reasonable.

Moreover, Defendants and their counsel made an effort to minimize the time spent litigating this case.  In an effort to keep fees and costs low, only one

deposition was taken on behalf of Welch and WTS.  Upon the advice of counsel,

Welch and WTS elected not to take the deposition of the experts Lexpath had

retained for trial, an economic expert by the name of Joseph P. Cipolla, Jr.,

CPA/ABV/PFS/CFF, CFE from Cipolla & Co., L.L.C. and a computer forensic

expert, Andrew Donofrio of Digital4NX Group.

     Welch and WTS also made repeated efforts to settle the case, both through

the use of a professional mediator, (retired) Judge Harriet Derman, and Magistrate

Judge Lois Goodman, as well as through direct communication with Lexpath's

counsel.

### C. The full amount of attorney fees incurred, including any amounts paid by an insurer, are recoverable.

     When a party is entitled to or awarded attorney fees and costs, all attorney

fees and costs incurred by that party are recoverable including any amounts paid by

an insurer.  Hough v. Huffman, 555 So. 2d 942, 945 (Fla. Dist. Ct. App. 1990),

approved sub not. Aspen v. Bayless, 564 So. 2d 1081 (Fla. 1990) ("[f]ailure to

allow a cost award to a prevailing defendant who is insured, because of the fact of

insurance coverage alone, gives the plaintiff … an undeserved windfall."); Couch

v. Drew, 554 So. 2d 1185 (Fla. Dist. Ct. App. 1989), approved, 565 So. 2d 1354

(Fla. 1990) (holding that prevailing defendant was entitled to statutory attorney

fees and costs, regardless of fact that his fees and costs had been paid by his

insurer); Griffith v. United States, No. CIV. A. 87-1665, 1989 WL 150931, at *1

(E.D. Pa. Dec. 11, 1989) (holding that attorney's fees and costs are recoverable notwithstanding the fact that these expenses have already been paid by an insurance carrier).

Lexpath erroneously contends that Defendants' motion for attorneys' fees and costs should be denied because the fees they incurred were paid by Hiscox. (Plaintiff Lexpath Technologies Holdings, Inc.'s Memorandum of Law in Opposition to Defendants' Motion for Costs and Attorneys' Fees ("Lexpath's Opp. Memo") at pg.10; ECF Doc. 134)  Courts have repeatedly rejected the notion that a non-prevailing plaintiff should benefit from a prevailing-defendant having had the foresight to obtain insurance coverage.  See  Hough v. Huffman, 555 So. 2d 942, 945 (Fla. Dist. Ct. App. 1990), approved sub not. Aspen v. Bayless, 564 So. 2d 1081 (Fla. 1990) ("when a prevailing defendant has paid premiums for such insurance coverage, a non-prevailing plaintiff should not be afforded any fortuitous benefit from such circumstances.").

Accordingly, the Court should award Defendants the full amount of attorneys' fees.  Moreover, Welch and WTS themselves paid $46,092.70 for their defense as well as the premiums that allowed them to maintain and use their insurance.  Defendants should thus be awarded a total of $225,276.00 for attorneys' fees.

**D. The Court should award Defendants all of their reasonable attorney fees paid because Lexpath's claims involve a common core of facts and are based on related legal theories.**

In assessing attorney fees, the Supreme Court of the United States has held that where the facts and legal theories of a case are related and the prevailing party obtained "excellent results", the district court should award attorney fees for all hours reasonably expended on the litigation – not the number of hours expended on individual claims. Hensley v. Eckerhart, 461 U.S. 424, 435–40, 103 S. Ct. 1933, 1940–43, 76 L. Ed. 2d 40 (1983).

In Hensley, the plaintiffs sought and the District Court awarded attorney fees for hours spent on successful claims as well as hours spent on unsuccessful claims. The Supreme Court held that "[g]iven the interrelated nature of the facts and legal theories in this case, the District Court did not err in refusing to apportion the fee award mechanically on the basis of each particular issue." Hensley v. Eckerhart, 461 U.S. at 438. The Court in Hensley reasoned that where plaintiff's claims for relief involve a common core of facts or are based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. at 435. Accordingly, where the prevailing party obtained "excellent results, his attorney should recover a fully compensatory fee." Id.

Here, the facts and legal theories of the case are related. All but one of the

nine counts in Lexpath's complaint were based on Defendants alleged

misappropriation of trade secrets and confidential information.  Lexpath repeatedly

relied on its allegation that Defendants accessed and copied confidential and trade

secret information to not only support their NJTSA and unfair competition claims

but their other claims as well.

Lexpath referenced the alleged misappropriation of trade secrets or

confidential information throughout its complaint.  Counts one through six, as well

as Counts eight and nine, are all based in part or in while on Welch and WTS's

alleged misappropriation of trade secrets and confidential information.  (See

Exhibit "G" to the Kemeny Declaration, ¶¶ 48-49, 88, 65, 70, 73, 86, and 88).

Moreover, Lexpath relied on this allegation throughout its trial brief to

support nearly all of its legal claims.  To support their allegation that Defendants

tortuously interfered with Lexpath's business, Lexpath states in their trial brief:

> Evidence will also show, and the Spoliation Order permits the finder
> of fact to infer, that Welch copied and took Lexpath's **confidential
> and trade secret information**, and used it to solicit Liberty and
> EIMC's business.
>
> (Exhibit D to the Declaration of Daniel F. Markham in Opposition to
> Defendants' Motion for Costs and Attorneys' Fees ("Markham
> Declaration"), pg. 13; ECF Doc. 134-5) (emphasis added)

To support their allegation that Defendants violated the Computer Fraud and

Abuse Act, Lexpath further invokes the taking of confidential information:

> The evidence presented at trial will demonstrate that Defendants breached multiple sections of the CFA . . . by improperly accessing and copying Lexpath's **confidential information**.

> (Id. at pg. 17) (emphasis added)

To support their allegation that Defendants violated the New Jersey Computer Related Offenses Act, Lexpath once again states in their trial brief:

> Welch's unauthorized access and taking of Lexpath's information assisted him in soliciting and taking Liberty and EIMC's business for WTS.

> (Id. at pg. 21; *see also* Id. at pgs. 9-11 and pg. 25 showing that Lexpath further referenced the alleged accessing and taking of confidential and trade secret to support their duty of loyalty, implied covenant of good faith and fair dealing, and unfair competition claims)

Moreover, the claims in this action involve a common core of facts.  They all relate to Welch leaving his employment with Lexpath and starting his own company, WTS, and why some of Lexpath's customers chose to retain the services of WTS.

Because the legal theories and facts of this case are related and the prevailing party obtained "excellent results", the Court should award Defendants attorney fees for all hours expended by their counsel on this case.  *See* <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435–40, 103 S. Ct. 1933, 1940–43, 76 L. Ed. 2d 40 (1983).

25

**E. Alternatively, should the court limit the award of fees to those incurred in defending against the trade secrets claim, an allocation based upon percentages is appropriate.**

Many circuits have held that where a fee application is voluminous, an hour-by-hour analysis of a fee application is not necessary, impractical, and a waste of judicial resources and that across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure may be appropriate and useful. Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). As such, the use of percentages is acceptable, and may even be necessary, tools for district courts to use in fashioning reasonable fee awards. Gates v. Deukmejian, 987 F.2d 1392, 1400 (9th Cir. 1992).

The legislative purpose for allowing an award of legal fees to a defendant when a claim is brought against him in bad faith under the Trade Secrets Acts is to deter parties from bringing such claims and to allow defendants who have incurred legal fees in defending against such meritless claims to recoup their fees. The New Jersey Trade Secrets Act is based upon the Uniform Trade Secrets Act. (See Assembly Bill No. 921--L.2011, c. 161, September 19, 2011). Comment to Article 4 of the Uniform Trade Secrets Act with 1985 Amendments, makes clear that the provision allowing for an award of attorneys' fees was drafted to provide "a deterrent to specious claims of misappropriation." (See http://www.uniformlaws.org/shared/docs/trade%20secrets/utsa_final_85.pdf).

26

This deterrent also serves an important policy of preventing employers from overly restricting their employees' ability and efforts to find employment elsewhere and would unduly restrict competition.

Here, allocated the time entries between the various claims made by Lexpath on an entry by entry basis is not only extremely cumbersome but could not be done accurately. (Kemeny Declaration ¶¶ 94,95). There are a small portion of entries that could be allocated specifically to one of Lexpath's claims, time entries for work performed to defend against two or three of Lexpath's claims, and many time entries that pertain to defending against all or most of the claims brought by Lexpath. It is also worth noting that even if an effort would have been made to allocate billable time spent in defending against Lexpath's trade secrets claim at the time that counsel was recording time entries, such allocation could not have been done accurately because many of Lexpath's legal claims relied on similar factual allegations and much of the work performed addressed multiple claims at the same time. (Kemeny Declaration ¶¶ 96-97).

To the extent that the court finds that Defendants should be awarded legal fees that are limited to work performed in defending against Lexpath's trade secrets claim, a calculation of a fee award based upon a percentage estimate of what work was reasonably performed to defend against the trade secrets claim would be appropriate. While an argument could be made that the court should only

27

award attorneys' fees for work that was performed for the sole purpose of defending against a trade secrets claim, such a decision would contravene the legislature's intent to deter specious trade secrets claims. If courts were to limit a fee award to work performed solely for the purpose of defending against a misappropriation claim and exclude any work that was necessarily performed to defend against the misappropriation as well as other claims, plaintiffs making a bad faith claim for misappropriation would be encouraged to come forward with additional tort claims, such as tortious interference with an economic advantage, based upon the same factual allegations used to support their misappropriation claims.  By raising additional claims based upon the same dubious factual allegations, plaintiffs would be able to increase a defendant's legal fees while drastically reducing the total amount of fees that could be awarded to the defendant.

### F. At least 40 percent of the fees incurred by Welch and WTS were incurred to defendant against the claim that they misappropriated trade secrets.

At least forty percent of the time spent by defense counsel in this matter was on work that was reasonably necessary to defend against Lexpath's claim that Welch and WTS misappropriated trade. (Kemeny Declaration ¶ 98).  Accordingly, if the court chooses to grant a fee award that is limited to only that work performed that was reasonably necessary to defend against Lexpath's trade secrets claim, an

award in the amount of $90,110.40 for legal fees ($225,276.00 x 0.40), plus costs in the amount of $5,288.86, is appropriate.

The forty percent estimate was reached by reviewing the time records and considering the time and effort involved in defending against each of Lexpath's claims and the manner in which the claims are interrelated. (Kemeny Declaration ¶ 99). At least three of the nine counts in Lexpath's complaint required Lexpath to show that Defendants misappropriated trade secrets or other confidential information to prevail. These counts included Count VIII alleging a violation of the New Jersey Trade Secrets Act, Count III alleging misappropriation of trade secrets under New Jersey common law, and Count IV claiming that Welch and WTS engaged in unfair competition through the misappropriation of trade secrets and other confidential information. Count III was dismissed by the court on Defendants' motion because the common law claim was superseded by the New Jersey Trade Secrets Act. (Kemeny Declaration ¶ 100).

There are also two counts in Lexpath's complaint which are primarily based upon allegations that Welch improperly accessed Lexpath's computer systems to misappropriate trade secrets and confidential information. These counts are Count I, claiming that Welch had violated the Federal Computer Fraud and Abuse Act, and Count IX, alleging that Welch violated New Jersey's Computer Fraud and Abuse Act. In both counts, Lexpath claimed that the computer related acts were

29

violated by Welch's wrongful downloading of trade secrets and then using that information to solicit customers.  (Kemeny Declaration ¶ 101).

Most of the factual allegations made to support the claims under the Computer Fraud and Abuse Act and the Computer Related Offenses Act, were allegations as to how Welch had supposedly stolen trade secrets from Lexpath's computer systems. As such, these claims were inextricably intertwined with Lexpath's trade secrets claims and much of Defendants' efforts to defend against the claims that they had violated the Computer Fraud and Abuse Act and the Computer Related Offenses Act were focused on demonstrating that Lexpath lacked any reasonable basis to claim that Welch had stolen trade secrets from its computer system.  (Kemeny Declaration ¶ 102).

The compensatory damages sought as a result of these alleged violations of the computer related acts were primarily for revenue that was purportedly lost because Welch had stolen trade secret information. Lexpath sought well over $600,000 in compensatory damages for income it claimed it had lost because Welch had used trade secret information he had improperly acquired from Lexpath's computer system to solicit Lexpath's customers.  As such, Lexpath's claims under the Computer Fraud and Abuse Act and the Computer Related Offenses Act rose and fell on whether or not it could establish that Welch had

downloaded or transferred trade secrets through its computer system.  (Kemeny Declaration ¶¶ 104-105).

Lexpath also sought to support three of the other counts in its complaint, with allegations that Welch had stolen its trade secrets and then used those secrets to compete. In Count II, Lexpath alleged that Welch violated the duty of loyalty he owed to Lexpath by, among other things, "utilizing and/or disseminating Lexpath's Confidential Information." (Exhibit "G" to the Kemeny Declaration, ¶ 54)  In Count V, Lexpath claimed that Welch violated the implied covenant of good faith and fair dealing that arose from his oral employment agreement with Lexpath by engaging in the "unlawful conduct mentioned above" in the Complaint, which included the alleged misappropriation of trade secrets and confidential information. (See Id. ¶ 70)  In Count VI, Lexpath claimed that Welch and WTS engaged in tortious interference with a prospective economic advantage by, among other things, "depriving Lexpath of the exclusivity of its Confidential Information and trade secrets." (Id. ¶ 73) While Lexpath sought to support its claims in Counts II, V, and VI of its complaint with allegations about how and when Welch and WTS solicited customers, it also sought to support these claims with unsupported allegations that Welch had improperly taken trade secrets misappropriated its trade secrets.  Thus, while Lexpath's allegations of misappropriation were not necessary

to support these claims, they were at a minimum one of several bases that Lexpath attempted to use in support of these claims.  (Kemeny Declaration ¶¶  106-110).

The only claim brought by Lexpath in this action which Lexpath did not seek to sustain with its allegations that Welch has stolen its trade secrets was in Count VII of its complaint, where it alleged that it was damaged because Welch had disparaged it to its customers. While Lexpath sought the same consequential damages under this claim (over $600,000 in lost profits), as it had under its claim that Defendants had misappropriated trade secrets, the defense to this claim was much simpler and less time consuming than the work necessary to defend against the trade secrets claims. Defense counsel successfully moved to exclude hearsay testimony of the witnesses who would have testified at trial in support of Lexpath's disparagement claim prior to trial such that little additional work was required to address this claim other than to raise objections and insist upon limiting instructions when Lexpath sought to introduce the excluded testimony at trial. While the court may not be inclined to award Defendants legal fees for work performed in defending against Lexpath's disparagement claim because it was distinct from trade secrets claim, the time and effort spent in defending against the disparagement claim was a small portion of the total time spent by counsel in defending against Lexpath's action.  (Kemeny Declaration ¶¶  111-114).

Lexpath's claim that Welch misappropriated trade secrets was more difficult to address because Welch had access to some of Lexpath's confidential information during his employment and Lexpath had retained the services of a computer forensic expert to supports its allegation that Welch had deleted information that would have shown he had improperly copied or downloaded trade secrets from Lexpath's computer system. Furthermore, during discovery Lexpath had stated that a computer expert had studied a laptop that Welch had used and determine that over 53,000 files had been deleted from the computer, but it did not identify the expert or produce a report until after discovery had ended – despite Defendants' interrogatories and requests for documents that had sought the report and the identities of any experts Lexpath might use. (See Certification of Alexander Kemeny, ECF Doc. 49-7, ¶¶12-13)  Despites Defendants' request to exclude the use of the expert because Lexpath had failed to identity the expert or produce his report until after the expiration of discovery, Lexpath was permitted to use its expert's testimony to support its claim that Welch had spoliated evidence that would have supported its misappropriation of trade secrets claim.  (Kemeny Declaration ¶¶ 115-117).

In addressing Lexpath's claim that Welch and WTS misappropriated its trade secrets, defense counsel drafted specific interrogatory questions, requests for documents and requests for admissions. During the deposition of Lexpath

principal, Martin Tuohy, the sole deposition taken by defense counsel, a large portion of time was spent inquiring into what evidence, if any, Lexpath had to support its claim that Welch and WTS has misappropriated trade secrets. In seeking discovery from Lexpath, we sought to narrow what information it was claiming had been misappropriated, when and how the misappropriation had supposedly occurred, whether Lexpath gained any economic advantage from the information, what efforts Lexpath had taken to protect the secrecy of the information, and whether the information was knowledge or skill that was acquired by Welch in the scope and for the purpose of performing his duties as a Lexpath employee.  (Kemeny Declaration ¶ 118).

At trial, defense counsel also spent a lot of time addressing Lexpath's claims that Welch and WTS misappropriated trade secrets.  Defense counsel spent far more time cross-examining Mr. Tuohy than any other witness, and much of that cross-examination was focused on how Welch had acquired information in course of his employment as well as Lexpath's inability to identify any trade secret that was acquired though improper means.  (Kemeny Declaration ¶¶ 119-120).

In its efforts to succeed on its claim that Welch misappropriated trade secrets, Lexpath requested that the court find that Welch had engaged in spoliation and sanction Defendants by dismissing their pleadings and entering a judgment against them as to liability.  Defendants contested the allegation, but after a hearing

on the issue, the court found that evidence may have been spoliated and chose to enter the least severe sanction available against Defendants by deciding to instruct the jury that it *may* presume that the lost information had been unfavorable to Defendants. (Kemeny Declaration ¶ 122-123).

Once the court entered its order, Defendants' focus shifted from opposing Lexpath's spoliation motion to two other strategies, (1) molding the spoliation instruction to make it as benign as possible and (2) developing the facts at trial necessary to defeat Lexpath's efforts to create an inference that Welch had deleted relevant evidence that could not be obtained elsewhere. (Kemeny Decl. ¶ 124).

In responding to the court's decision to charge the jury on the issue of spoliation, Defendants sought to ensure that any instruction given would be as benign as possible so that it would provide the only common-sense instruction that the jury could infer the lost information was unfavorable if it found that the (a) the lost information was relevant, (b) it was reasonably foreseeable to Defendants that the information was relevant at the time that Welch ran CCleaner on his laptop, and (c) that the information was not available elsewhere. (Kemeny Decl. ¶ 125).

Defense counsel also spent a significant amount of time preparing for the cross-examination of Lexpath's computer forensic expert in an effort to disprove Lexpath's allegation that Welch had deleted relevant evidence after his departure

from Lexpath. Lexpath's forensic expert was cross-examined at the spoliation hearing and again at trial.   (Kemeny Declaration ¶ 126).

On direct examination, and at the beginning of his cross-examination, Lexpath's expert maintained Welch had only run CCleaner on the laptop after his resignation from Lexpath and that, as a result of CCleaner's use, more than 53,000 files had been permanently deleted from the laptop such that they could not be recovered. By the end of cross-examination, Lexpath's expert admitted that CCleaner had been run on the laptop in prior years, he did not know how often CCleaner had been used, he did not know when files had first been deleted through the use of CCleaner, and he could not tell what information had been in the deleted. He also admitted that the information which Lexpath was claiming would have supported its claims had it not been deleted, could have been obtained through other sources such as Lexpath's cloud based computer systems, backups, or other locations external to the laptop.   (Kemeny Declaration ¶ 129-131).

While Lexpath has argued that it would be inequitable for it to bear the cost of defending against its claim that Welch engaged in spoliation, it was Lexpath's decision to raise the allegation, hire an expert, and press the issue in an effort to support its claim the Defendants misappropriated trade secrets. The legal fees incurred by Defendants in disputing this allegation are exactly those which are encompassed by the New Jersey Trade Secrets Act when it allows for an award of

reasonable attorney's fees and costs, including a reasonable sum to cover the service of expert witnesses who may be retained, to defend against trade secrets claim made in bad faith. See N.J.S.A. §56:15-6.

Because so many of Lexpath's claims were closely intertwined with its trade secrets claim, an exact allocation of time is impossible. However, the estimate that at least forty percent of the time spent by defenses counsel was spent performing work that was reasonably necessary to defend against Lexpath's misappropriation of trade secrets is a conservative estimate. With the exception of the disparagement claim, Lexpath sought to support all its claims with allegations that Defendants had misappropriated trade secrets, and five out of nine of the counts in Lexpath's complaint, were based entirely or at least primarily on the allegation that Welch and WTS had improperly acquired and used Lexpath's trade secrets.

Accordingly, if the court chooses to grant a fee award that is limited to only that work performed that was reasonably necessary to defend against Lexpath's trade secrets claim, an award in the amount of $90,110.40 for legal fees ($225,276.00 x 0.40), plus costs in the amount of $5,288.86, is appropriate.

### G. The costs incurred by Defendants are reasonable.

Defendants incurred costs in the amount of $5,288.86 for their defense in this matter.  These costs were incurred for mediation fees, court reporting fees, trial witness fees (including travel costs), copy charges for trial exhibits, and subpoena

fees.  (See Exhibit "F" to the Kemeny Declaration for an itemized report of the costs).

Defendants and their counsel made an effort to keep their litigation costs to a minimum. During the seven-day trial in this matter, Defendants called only one witness, while Lexpath called seven witnesses. Defendants did not retain an expert witness in this matter, while Lexpath retained two expert witnesses. Defendants took only one deposition in this matter and, upon the advice of counsel, chose not to depose the two experts retained by Lexpath.

The total costs of $5,288.86 are reasonable and should be awarded to Defendants under the New Jersey Trade Secrets Act and, as the prevailing party, under Fed. R. Civ. Pro. 54(d).

**III)    The reasonableness of the attorneys' fees incurred is supported by the offer of judgment and settlement offers that were made by Defendants and rejected by Lexpath.**

The Court of Appeals for the Third Circuit has ruled that settlement offers may be used to measure the reasonableness of attorney fees incurred.  <u>Lohman v. Duryea Borough</u>, 574 F.3d 163, 167 (3d Cir. 2009) (holding that "settlement negotiations … are clearly [] one factor to be considered in the award of fees.").

Although evidence of a settlement offer is inadmissible to prove or disprove the validity or amount of a disputed claim, the court may admit such evidence for another purpose. Fed. R. Evid. 408. Thus, evidence of settlement negotiation may

be used to determine both the success of counsel and the reasonableness of the attorneys' fees incurred. Lohman, supra., 574 F.3d at 167; Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC, 739 F. Supp. 2d 125, 135 (D. Conn. 2010).

In this case, nearly three years prior to trial, Welch and WTS made a Rule 68d offer of judgment to pay Lexpath $200,000, with $100,000 being paid immediately and another $100,000 being paid over ten years to settle the case and avoid incurring additional legal fees.  The offer of judgment and settlement offers made by Defendants show that they made substantial efforts to mitigate their attorney fees and resolve this case early in the litigation.  Indeed, Defendants offered to pay Plaintiff $200,000, nearly the same amount of attorney fees that Defendants incurred litigating this case as a result of Plaintiff's refusal to accept their legitimate and good faith efforts to settle the matter.

In light of the foregoing, Defendants request for attorney fees in the amount of $225,276.00 is reasonable and largely could have been avoided had Lexpath accepted Defendants' settlement offers.

## CONCLUSION

For the foregoing reasons, Defendants Brian Welch and Welch Technology Services, LLC respectfully request that the Court grant their motion for attorneys' fees and costs and enter judgment in favor of Welch and WTS and against Lexpath for attorneys' fees in the amount of $225,276.00 and costs in the amount of $5,288.86.   Alternatively, should the Court limit the fee award to work performed on Lexpath's trade secrets claim, an award should be entered in the amount of $90,110.40 for legal fees, plus costs in the amount of $5,288.86.

Respectfully submitted,

**KEMENY, LLC**
*Attorneys for Defendants-Counterclaimants, Brian Welch and Welch technology Services, LLC*

 */s/ Alexander J. Kemeny*
**MEIR S. KALISH** (161332015)
**ALEXANDER J. KEMENY** (AK3438)

40